# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

### CASE NO. 21-62122-CIV-MORENO/GOODMAN

JUAN ABREU, individually, and on behalf of
all others similarly situated,

      Plaintiff,

v.

PFIZER, INC.,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER
## CASE TO THE SOUTHERN DISTRICT OF NEW YORK

Plaintiff Juan Abreu filed this putative class-action lawsuit against Defendant Pfizer, Inc. based on claims surrounding Defendant's production and voluntary recall of Chantix, a drug developed to assist individuals with combatting nicotine addiction. [ECF No. 1]. Within a month of Plaintiff's Complaint being filed, Defendant filed a Motion to Change Venue, seeking to transfer this matter to the Southern District of New York, where it contends an earlier-filed class-action lawsuit is pending. [ECF No. 9]. Plaintiff filed a response to Defendant's Motion to Change Venue. [ECF No. 18].

Shortly thereafter, MSP Recovery Claims Series 44, LLC and MSP Recovery Claims, Series LLC (collectively, "MSP") filed a Motion to Intervene to Oppose

Defendant's Motion to Change Venue. [ECF No. 20].[1] Defendant filed a response to MSP's

motion [ECF No. 25] and MSP filed a reply [ECF No. 29].

United States District Judge Federico A. Moreno referred to the Undersigned

rulings on all pretrial, non-dispositive matters and a Report and Recommendations on all

dispositive matters. [ECF No. 32].

For the reasons discussed below, the Undersigned **grants** Defendant's Motion and

Orders that the case be transferred to the Southern District of New York.[2]

---

[1]      The Undersigned previously addressed this motion in a separately-issued Report
and Recommendations. [ECF No. 34].

[2]      The Eleventh Circuit has yet to rule on whether a motion to transfer venue should
be treated as a dispositive or non-dispositive motion; thus, there is no binding precedent
as to whether the Undersigned should issue an Order pursuant to the Magistrate Judge's
authority or a Report and Recommendation for review by the District Judge. *Compare
United States v. Dimaria,* No. 17-20898-CR, 2018 WL 1173094, at *1 (S.D. Fla. Mar. 6, 2018);
*Dunn & Fenley, LLC v. Diederich,* No. 06-6243-TC, 2010 WL 28662, at *2 (D. Or. Jan. 5, 2010)
("[B]ecause a motion to transfer venue does not address the merits of the case but merely
changes the forum of an action, it is a non-dispositive matter that is within the province
of a magistrate judge's authority."); *Paoa v. Marati*, No. 07-00370, 2007 WL 4563938 (D.
Haw. Dec. 28, 2007) (noting that transfer of venue is a non-dispositive matter); *Holmes v.
TV-3, Inc.*, 141 F.R.D. 697 (W.D. La. 1991), *with Payton v. Saginaw Cty. Jail*, 743 F. Supp. 2d
691, 693 (E.D. Mich. 2010) (collecting cases, addressing split in authority and concluding
that "the magistrate judge did not have the authority to enter the order transferring
venue").

The Undersigned finds the decisions of the courts which choose to treat the issue
as non-dispositive more persuasive than the courts which conclude the opposite. The
decisions which determine that an Order is appropriate conclude that transferring a case
does not *dispose* of any claim, it only moves the claim to another location, which is a non-
dispositive action (because the party may still proceed on all claims in the new forum).
The decisions which determine that a magistrate judge is limited to a Report and
Recommendations conclude that transferring a case (or remanding a case to state court)

## I.      Background

This case is one of a series of putative class-action cases filed nationwide after Defendant recalled "Chantix," a drug it had developed to assist users quit smoking. Based on the Plaintiff's and Defendant's filings [ECF Nos. 9; 18], the Undersigned has identified the following cases filed by end-user plaintiffs since Defendant's recall of Chantix[3]:

*Harris v. Pfizer, Inc.*, 1:21-cv-06789 (S.D.N.Y.) (filed August 12, 2021)

*Edwards v. Pfizer, Inc.*, 2:21-CV-4275 (E.D. Pa.) (filed September 29, 2021)

*Jacobson v. Pfizer, Inc.*, 2:21-CV-7961 (C.D. Cal.) (filed October 5, 2021)

*Webb v. Pfizer, Inc.*, 1:21-CV-8244 (S.D.N.Y.) (filed October 6, 2021)

---

disposes of the litigation in the current forum and creates a domino effect where the transferred party may no longer be able to litigate because the new forum is too inconvenient. This logic is less persuasive because it rests, in part, on a definition of dispositive which includes rulings that do not dispose of claims but perhaps discourage a litigant from continuing forward. In the Undersigned's view, this is too expansive of a definition.

Following the guidance of those decisions which hold that an Order is appropriate, the Undersigned is entering an Order on the Motion. If I am incorrect, then I cross-designate this motion as a contingent Report and Recommendations, if necessary.

[3]      The Undersigned is permitted to take judicial notice of these other related lawsuits. *See DeBose v. Ellucian Co., L.P.*, 802 F. App'x 429, 434 (11th Cir. 2019) (noting that "district court . . . properly took judicial notice of the pleadings and orders in [plaintiff]'s earlier federal case stemming from her allegedly wrongful termination, as the records in that case were not subject to reasonable dispute"); *Bakov v. Consol. Travel Holdings Grp., Inc.*, No. 19-CV-61509-WPD/SNOW, 2020 WL 9934410, at *1, n.1 (S.D. Fla. Apr. 9, 2020) ("The court may take judicial notice of another court's docket entries and orders for the limited purpose of recognizing the filings and judicial acts they represent.").

*Seeley v. Pfizer, Inc.*, 3:21-CV-7892 (N.D. Cal.) (filed October 7, 2021)

*Duff v. Pfizer, Inc.*, 2:21-CV-1350 (W.D. Pa.) (filed October 8, 2021)

*Abreu v. Pfizer, Inc.*, 0:21-CV-62122 (S.D. Fla.) (filed October 12, 2021)

*Evans v. Pfizer, Inc.*, 3:21-CV-1263 (S.D. Ill.) (filed October 15, 2021)

*Houghton v. Pfizer, Inc.*, 1:21-CV-23987 (S.D. Fla.) (filed November 12, 2021)

In addition to these nine class action cases, MSP also filed a putative class action lawsuit against Defendant, seeking to represent itself and similarly situated third-party payors. MSP's lawsuit is currently pending in the Southern District of Florida with United States District Court Judge Roy K. Altman: *MSP Recovery Claims Series 44, LLC v. Pfizer Inc.*, No. 1:21-CV-23676 (S.D. Fla.) (filed October 19, 2021). Based on the representations of Plaintiff and MSP, this is the only third-party payor lawsuit against Pfizer currently pending. [ECF Nos. 18; 20; 29].

The majority of these cases have been stayed pending the resolution of Defendant's motion to transfer. Collectively, the universe of plaintiffs are represented by three law firms:

<u>Bursor and Fisher, P.A.</u>

*Harris v. Pfizer, Inc.*, 1:21-cv-06789 (S.D.N.Y.) (filed August 12, 2021)

*Houghton v. Pfizer, Inc.*, 1:21-CV-23987 (S.D. Fla.) (filed November 12, 2021) (stayed

[1:21-CV-23987 (S.D. Fla.) ECF No. 11][4]

Honik LLC

*Edwards v. Pfizer, Inc.*, 2:21-CV-4275 (E.D. Pa.) (filed September 29, 2021) (stayed

[2:21-CV-4275 (E.D. Pa.) ECF No. 6])

*Jacobson v. Pfizer, Inc.*, 2:21-CV-7961 (C.D. Cal.) (filed October 5, 2021) (voluntarily

dismissed after stay denied [2:21-CV-7961 (C.D. Cal.) ECF Nos. 22; 23])

*Webb v. Pfizer, Inc.*, 1:21-CV-8244 (S.D.N.Y.) (filed October 6, 2021) (stayed [1:21-

CV-8244 (S.D.N.Y.) ECF No. 13])

*Seeley v. Pfizer, Inc.*, 3:21-CV-7892 (N.D. Cal.) (filed October 7, 2021) (stayed [3:21-

CV-7892 (N.D. Cal.) ECF Nos. 16 17])

*Duff v. Pfizer, Inc.*, 2:21-CV-1350 (W.D. Pa.) (filed October 8, 2021) (stayed [2:21-CV-

1350 (W.D. Pa.) ECF No. 8])

*Abreu v. Pfizer, Inc.*, 0:21-CV-62122 (S.D. Fla.) (filed October 12, 2021)

*Evans v. Pfizer, Inc.*, 3:21-CV-1263 (S.D. Ill.) (filed October 15, 2021) (stayed [3:21-

CV-1263 (S.D. Ill.) ECF Nos. 8; 11])

Rivero Mestre

---

[4]      In this Order, citations to docket entries in other cases (and jurisdictions) will
contain the case number and jurisdiction before the CM/ECF Number. Citations to docket
entries in this case will contain only the CM/ECF Number.

*MSP Recovery Claims Series 44, LLC v. Pfizer Inc.*, No. 1:21-CV-23676 (S.D. Fla.) (filed October 19, 2021)

Two of the three firms each represent a separate Southern District of New York plaintiff and a separate Southern District of Florida plaintiff. These two firms, along with MSP's law firm, have filed a motion to consolidate their three Southern District of Florida cases and appoint all three firms as class counsel. [ECF No. 24]. According to Plaintiff, all class counsel and the plaintiffs throughout the nation have been informally coordinating and jointly agreed that this jurisdiction and this case is the appropriate forum within which to prosecute their claims against Pfizer. Currently, however, all three Southern District of Florida cases are assigned to different judges.

Pfizer, on the other hand, desires for this case to move forward in the Southern District of New York, where *Harris* was filed more than a month and a half before *Evans* (the next earliest-filed case) and two months before this case was filed. In *Harris*, the plaintiff has filed a complaint and amended complaint [1:21-cv-06789 (S.D.N.Y.) ECF Nos. 1; 24], Pfizer has filed an Answer [1:21-cv-06789 (S.D.N.Y.) ECF No. 23], and there is a fully briefed motion to dismiss [1:21-cv-06789 (S.D.N.Y.) ECF Nos. 30; 33; 36].

Unlike the other end-user plaintiffs, MSP is the outlier plaintiff in that it seeks to represent "a class of similarly situated third-party payers." [1:21-CV-23676 (S.D. Fla.) ECF No. 1]. MSP represents the interests of various Medicare Advantage plans and healthcare benefit providers (collectively, "insurance carriers") through assignment, including the

right to recover. [1:21-CV-23676 (S.D. Fla.) ECF No. 1, ¶¶ 17-23]. A sample of the insurance carriers who have assigned their rights to MSP includes: Blue Cross & Blue Shield of Rhode Island; Health First Health Plans, a central Florida insurance carrier; EmblemHealth, a New York insurance carrier; Summacare, an Ohio-based insurance carrier; and Connecticare, a Connecticut based insurance carrier. [1:21-CV-23676 (S.D. Fla.) ECF No. 1, ¶¶ 24-36].

In MSP's case, United States District Court Judge Roy K. Altman denied MSP's request to transfer its case to United States District Judge Federico A. Moreno, the presiding judge in the instant case. [1:21-CV-23676 (S.D. Fla.) ECF Nos. 7; 15].

The various submissions filed by Pfizer and the three plaintiff's firms driving this litigation indicate that the parties agree that these cases should be litigated in the *same* forum, but they disagree on *which* forum is the proper one.

## II.  Legal Standard

### a.  The First-Filed Rule

"The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts,

there is a strong presumption across the federal circuits that favors the forum of the first-filed suit.").

The first-to-file rule "not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Collegiate Licensing Co.*, 713 F.3d at 78. The rule was developed because "[c]ompeting lawsuits involving the same parties and the same issues in separate jurisdictions waste judicial resources and can lead to conflicting results." *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012).

The Court must consider three factors when evaluating the first-to-file rule: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Women's Choice Pharms., LLC v. Rook Pharms., Inc.*, No. 16-cv-62074, 2016 WL 6600438, at *2 (S.D. Fla. Nov. 8, 2016); *Chapman v. Progressive Am. Ins. Co.*, 2017 WL 3124186, at *1 (N.D. Fla. July 24, 2017).

If the court finds that the first-to-file rule applies, then the party objecting to jurisdiction in the first-filed forum bears the burden of demonstrating that "compelling circumstances" support an exception to the rule. *Lianne Yao v. Ulta Beauty Inc.*, No. 18-22213-CIV, 2018 WL 4208324, at *1 (S.D. Fla. Aug. 8, 2018). "Compelling circumstances include bad faith negotiations, an anticipatory suit, and forum shopping." *Belacon Pallet Servs, LLC v. Amerifreight, Inc.*, No. 15cv191, 2016 WL 8999936, at *4 (N.D. Fla. Mar. 26,

2016). (citation omitted). If the presumption holds, then the district court can either stay, dismiss, or transfer the second-filed case to the forum in which the first-filed action is pending. *See Futurewei Tech., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 709 (Fed. Cir. 2013).

The rule does not require rigid or inflexible application but should, instead, be applied in a manner that best serves the interests of justice. *See Philibert v. Ethicon, Inc.*, No. 04-81101, 2005 WL 525330, at *1 (S.D. Fla. Jan. 14, 2005); *Carl v. Republic Sec. Bank*, No. 018981CIVHURLEY, 2002 WL 32167730, at *3 (S.D. Fla. Jan. 22, 2002). Thus, although the forum where the first-filed case resides is typically given priority, it is appropriate to depart from the rule "when there is a showing that the balance of convenience tips in favor of the second forum or that there are special circumstances which justify giving priority to the second action." *Philibert*, 2005 WL 525330, at *1 (citing *Carl*, 2002 WL 32167730, at *3).

b. 28 U.S.C. section 1404(a)

A district court "may transfer any civil action to any other district or division where it might have been brought" if the transfer would make the litigation more convenient or would otherwise serve the interests of justice. 28 U.S.C. § 1404(a); *In re Ricoh Corporation*, 870 F.2d 570, 572 (11th Cir. 1989). The Court considers nine factors when assessing whether transfer would serve the interests of justice:

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the

parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel*, 430 F.3d at 1135 n.1.

### III.   Analysis

Defendant seeks to transfer this case under either the first-to-file rule or under 28 U.S.C. § 1404. In Defendant's view, not only is the Southern District of New York the location of the first-filed Chantix case -- and the only jurisdiction in which every plaintiff could transfer their case -- it is also the most well-situated jurisdiction to handle these cases. According to Plaintiff, neither of these transfer principles apply and Defendant is attempting to subvert informal coordination efforts by the three plaintiff's counsel to make the Southern District of Florida the operative jurisdiction.

For the reasons discussed below, the Undersigned is not persuaded by Plaintiff's position and concludes that transfer to the Southern District of New York is appropriate.

### a.   Appropriate Court to Hear the Motion

As a preliminary matter, the Undersigned rejects Plaintiff's contention that "Pfizer is asking the wrong court to invoke the rule." [ECF No. 18]. Plaintiff bases this claim on a misreading of the facts and legal rulings in *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013). In *Collegiate Licensing*, the Eleventh Circuit did not address a ruling on a defendant's attempt to change forum to the jurisdiction of an earlier-filed case. Instead, it affirmed a prohibition on a defendant from filing an

10

intervening complaint in another jurisdiction because the pending case was the first-filed case. *Id.* at 78-79.

This, if anything, indicates only that the proper venue in which to file a motion to transfer (or a motion to stop an extra-judicial transfer) is the venue from which the party wants to transfer away. Multiple cases affirm that this method is proper and the party seeking transfer must file a motion to transfer with the court in which the case currently resides. *Kelly v. Gerber Prods. Co.*, No. 21-60602-CIV, 2021 WL 2410158, at *2 (S.D. Fla. June 11, 2021) ("The motion to transfer is properly made before the second forum; once the case is transferred, the first forum may decide whether the action should proceed independently."); *see also, e.g., Vina Dona Paula, S.A. v. Vineyard Brands, Inc.*, No. 11-20524-CIV, 2011 WL 4527441, at *1 (S.D. Fla. Sep. 28, 2011) (Moreno, J.) (transferring later-filed case pursuant to the first-to-file rule); *Zampa v. JUUL Labs, Inc.*, No. 18-256005-CIV, 2019 WL 1777730, at *5 (S.D. Fla. Apr. 23, 2019) (same); *Lianne Yao*, 2018 WL 4208324, at *4 (same); *Laskaris v. Fifth Third Bank*, 962 F. Supp. 2d 1297, 1299 (S.D. Fla. 2013) (same); *Rojas v. Am. Honda Motor Co.*, No. 19-21721-CIV, 2019 WL 6324616, at *3 (S.D. Fla. Nov. 26, 2019) (same); *Philibert*, 2005 WL 525330, at *2 (same).

  b. First-Filed Rule Factors

Because this Court is the proper forum in which to raise a transfer request, the Undersigned turns to the substantive three-factor analysis. Here, Defendant has met its

burden to establish each of the factors entitling it to the "strong presumption . . . that favors the forum of the first-filed suit under the first-filed rule." *Manuel*, 430 F.3d at 1135.

First, it is indisputable that the *Harris* action was filed prior to the instant case. Although Plaintiff attempts to downplay this time-gap by referring to it as a "few weeks" [ECF No. 18], the fact remains that Harris filed her case a full *eight weeks* before Abreu filed his. *Compare* [1:21-cv-06789 (S.D.N.Y.) ECF No. 1] *with* [ECF No. 1]. Thus, Defendant has established the first element.

Second, the parties are similar. In each case, Pfizer is the sole defendant. And, although Harris and Abreu are two separate individuals, each alleges similar claims against Pfizer and purport to represent a class and subclass of plaintiffs. *See Zampa*, 2019 WL 1777730, at *4 ("While the named plaintiffs are not the same, this is inconsequential because '[i]n a class action, the classes, and not the class representatives, are compared.'" (quoting *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)).

Specifically, Harris seeks to represent:

> a class defined as all persons in the United States who purchased Chantix (the "Class"). Specifically excluded from the Class are persons who made such purchase for the purpose of resale, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

[1:21-cv-06789 (S.D.N.Y.) ECF No. 24].

Likewise, Abreu seeks to represent:

> All individuals and entities in the United States and its territories and possessions who paid any amount of money for a varenicline-containing drug[5] (intended for personal or household use) that was manufactured, distributed, or sold by Defendant. . . . Excluded from the Class are: (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendant and affiliated entities, and their employees, officers, directors, and agents; (c) Defendant's legal representatives, assigns and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court -approved class.

[ECF No. 1] (footnote added). Each plaintiff also seeks to represent a "subclass" of purchasers residing in their State.

Plaintiff's argument against this factor is unpersuasive and is factually misleading. Plaintiff claims that Harris' lawsuit covers a more-narrow class of plaintiffs because it was filed before Defendant announced a product wide recall. [ECF No. 18]. While it is true that Harris' initial complaint referenced only twelve recalls [1:21-cv-06789 (S.D.N.Y.) ECF No. 21], her Amended Complaint (filed twenty days before Plaintiff filed his response to this motion) mentions that Pfizer recalled "all lots of Chantix 0.5 mg and 1 mg Tablets." [1:21-cv-06789 (S.D.N.Y.) ECF No. 24, ¶ 11]. The scope of the initial

---

[5]     Although Abreu uses the term "varenicline-containing drug" in his class definition, the first paragraph of his complaint indicates that this is meant to refer to Chantix. [ECF No. 1] ("This case arises from adulterated, misbranded, and unapproved varenicline-containing drugs ("VCDs") that were designed, manufactured, marketed, distributed, packaged, and/or ultimately sold by Defendant Pfizer, Inc., in the United States under the brand name Chantix.").

complaint is irrelevant; Harris' amended complaint -- the controlling charging document -- encompasses the same gamut of products and consumers as Plaintiff's lawsuit.

The final factor also falls in Defendant's favor because each action involves the same core of operative facts and will involve similar, if not identical, questions of law. Specifically, the factual underpinning of both lawsuits is Pfizer's design, manufacturing, marketing, regulatory claims, and distribution of Chantix.

According to Plaintiff, however, the Court should find that this factor is not met because "[his] action involves broader array [sic] of claims that [sic] those alleged in *Harris*, including claims for medical monitoring, negligent misrepresentation and omission, negligence, and negligence per se." [ECF No. 18]. But, contrary to Plaintiff's argument, the issues need only be similar; there is no requirement that the issues and claims be *identical. See First Equitable Realty, III, Ltd. v. Dickson*, No. 13-20609-CIV, 2013 WL 5539076, at *3 (S.D. Fla. Oct. 8, 2013) (applying the first-filed rule despite different claims because "the underlying facts are intertwined").

As stated by now-Chief United States Magistrate Judge Edwin G. Torres,

> Indeed, in a class action situation such as this, it would be impossible for the claims to overlap **exactly** where the actions are brought in different states, and the purpose of the rule would be defeated. There would be nothing to stop plaintiffs in all 50 states from filing separate nationwide class actions based upon their own state's law. (emphasis added).

*Zampa*, 2019 WL 1777730, at *5 (quoting *Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011)).

Were the Undersigned to accept Plaintiff's argument in support of dissimilarity, it would necessitate a simultaneous determination that consolidation in this jurisdiction -- Plaintiff's objective [ECF No. 24] -- would be unmerited if transfer were denied. Indeed, Plaintiff's own filing in its separate motion to consolidate takes a stance contradictory to his position on this factor. *See* ECF No. 24 (seeking to consolidate cases involving end-users with a case involving third party payors, stating, "[h]ere, consolidation is appropriate because each action involves overlapping questions of fact and law surrounding Pfizer's recall of Chantix due to the presence of N-nitroso-varenicline").

If cases involving two separate types of plaintiffs are sufficiently similar enough to warrant consolidation into a single action, then cases involving the same type of plaintiff must also contain sufficient similarity for transfer analysis purposes.

c.  Compelling Circumstances

Because Defendant has established all three factors necessary to support transfer to the Southern District of New York, the burden now shifts to Plaintiff to establish that "compelling circumstances" exist to warrant an exception to the first-filed rule. *Manuel*, 430 F.3d at 1135 ("[W]e require that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule.").

"Compelling circumstances include bad faith negotiations, an anticipatory suit, and forum shopping." *Chaban Wellness LLC v. Sundesa, LLC*, No. 15-CV-21497, 2015 WL

4538804, at *2 (S.D. Fla. July 27, 2015) (citing *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). Plaintiff accuses Defendant of both bad faith and forum shopping. As his primary argument, however, Plaintiff argues that the balancing of equitable factors requires denial of Defendant's motion because MSP's lawsuit -- the only suit purporting to represent third party payors -- is pending in this jurisdiction.

Plaintiff's allegations of bad faith and forum shopping overlap in substance. According to Plaintiff, after his counsel filed a separate action in California, a conversation occurred with defense counsel about the "potential national coordination of the Chantix matters." [ECF No. 18]. Although Defendant informed Plaintiff's counsel of the existence of another Pfizer-related class-action lawsuit, Plaintiff claims that defense counsel would not disclose the identity of that plaintiff or her counsel. *Id*. Plaintiff's counsel engaged in their own research and located Harris and her counsel. *Id.*

Through discussion, Plaintiff's counsel and Harris' counsel agreed that transfer and coordination in the Southern District of Florida "would make sense." *Id.* Because of this, Harris' counsel "proceeded to file a new case in [the Southern District of Florida], on behalf of a new client." *Id.* This is when, as Plaintiff's counsel claims, "Pfizer unexpectedly turned around and filed an answer in *Harris* for the explicit purpose of cutting off Plaintiff Harris's ability to voluntarily dismiss and re-file in this District as well." *Id.*

The Undersigned sees multiple issues with Plaintiff's allegations on this point. First, although the timeline as presented in Plaintiff's response leads the reader to believe

that Pfizer filed an answer only after Harris' counsel filed a new complaint in the Southern District of Florida, the docket indicates that Pfizer's answer in the *Harris* case was filed on November 8, 2021 [1:21-cv-06789 (S.D.N.Y.) ECF No. 23], and Harris' counsel's Florida complaint was not filed until November 12, 2021 (i.e., *after* the *Harris* Answer) [1:21-CV-23987 (S.D. Fla.) ECF No. 1].

Second, Plaintiff has failed to explain how Pfizer's actions and motivations, if true, constitute bad faith or forum shopping. The Undersigned is aware of no law, nor does Plaintiff cite any law, that requires a defendant to inform opposing counsel during informal discussions of other pending lawsuits. *See Strother v. Hylas Yachts, Inc.*, No. 12-80283, 2012 WL 4531357, at *2 (S.D. Fla. Oct. 1, 2012) ("Although Plaintiff has offered evidence that Defendants failed to respond to certain pre-suit communications, this failure alone does not demonstrate bad faith."). Nor has Plaintiff explained how a defendant's decision to file an answer in a lawsuit where it did not choose the location is "forum shopping."

Indeed, the timing of Defendant's filings indicate that before filing the answer in the *Harris* case, Defendant had already filed the instant motion to transfer. Thus, at face value, it appears more likely that Defendant wanted to prevent gamesmanship on a matter it had already begun litigating.

Third -- and most important on this issue -- Plaintiff's counsel's own filing actions contain indicia of forum shopping. In his response, Plaintiff ignores the fact that his

counsel filed seven different lawsuits in seven different jurisdictions, all seeking to represent a nationwide class of Chantix users. Moreover, his counsel does not seek to litigate these cases in the first jurisdiction in which a case was filed (*Edwards v. Pfizer, Inc.*, 2:21-CV-4275 (E.D. Pa.) (filed September 29, 2021)), nor does he seek to litigate it in the Southern District of New York, where he also filed a case earlier than the instant action; instead, he seeks to litigate the cases in his **sixth**-chosen jurisdiction.

Plaintiff's allegation of forum shopping, in addition to being undermined by his counsel's own actions in filing seven different lawsuits in seven different jurisdictions, is further eroded by the fact that he chose to serve Pfizer in only four of those actions.[6] Plaintiff, when confronted with this accusation in Defendant's initial motion, did not offer a response or explanation, and chose, instead, to ignore the issue. The Undersigned can think of no justification for this behavior other than Plaintiff's desire to obtain what he views as the most-desirable forum. If there is another explanation, then Plaintiff has not proffered it, despite being challenged on the scenario.

Nonetheless, Plaintiff also argues that the balance of equities supports an Order denying Defendant's motion to transfer. In support of his equity-based argument, Plaintiff asks this Court to consider MSP's lawsuit and the U.S.C. § 1404 factors. Defendant does not meaningfully address the existence of MSP's lawsuit in its response,

---

[6]     According to Defendant, Plaintiff's counsel has effectuated service in only *Seely, Jacobson, Abreu, and Evans*. [ECF No. 9-1].

other than to say that there are three Chantix cases in this jurisdiction, all of which are currently assigned to different judges and one of those judges has already denied a request to transfer the case to Judge Moreno. Further, although Defendant does not address whether the Court must consider the § 1404 factors in determining whether compelling circumstances exist, it challenges Plaintiff's view of the U.S.C. § 1404 factors and contends the factors support transfer.

Plaintiff's argument in support of demonstrating compelling circumstances rests heavily on the fact that MSP also has a pending lawsuit in the Southern District of Florida. Plaintiff argues that these combined lawsuits encompass "the entire universe of potential plaintiffs (i.e., consumers and third-party payors) seeking reimbursement for monies paid for any and all Chantix." [ECF No. 18]. In Plaintiff's view, this makes the Southern District of Florida a unique jurisdiction and justifies denying Defendant's request to transfer the case. Plaintiff claims that all plaintiffs and their common counsel are prepared to transfer their cases to this District.

Neither the willingness of the other end-user plaintiffs to transfer their cases to this jurisdiction, nor MSP's companion lawsuit already filed in this jurisdiction separately or individually constitute compelling reasons to reject Defendant's presumptively-correct transfer request.

To begin, the Undersigned affords no weight to Plaintiff's assertion that the "other plaintiffs and their common counsel [i.e., Abreu's counsel] are prepared to transfer all of

19

their cases to this District." [ECF No. 18]. If this were an appropriate consideration, then it would render the first-to-file rule meaningless and allow plaintiff's attorneys to subvert the rule via backdoor negotiations. To accept Plaintiff's argument on this point would be to allow a plaintiff's personal desire to outweigh any other consideration, which is neither equitable nor contemplated by the first-to-file rule in class action cases. *Moghaddam v. Dunkin Donuts, Inc.*, No. 02-60045-CIV-ZLOCH, 2002 WL 1940724, at *2 (S.D. Fla. Aug. 13, 2002) ("[A] plaintiff's choice of forum will be afforded less deference where, as here, the action is a class action.").

After disregarding Plaintiff's arguments regarding the desires of Plaintiff's counsel's other clients, the Undersigned is left with only MSP's existing lawsuit as a possible compelling reason to deny Defendant's request to transfer. Although Plaintiff and MSP may *prefer* for their cases to remain in the Southern District of Florida, there is no evidence that anything unique about this preference rebuts the strong presumption that the jurisdiction of the first-filed case is the appropriate jurisdiction.

First, Plaintiff and MSP believe the claims are similar enough to allow the cases to be consolidated. [ECF No. 24]. This similarity leaves MSP equally vulnerable to a meritorious first-to-file transfer request. Therefore, it is not even certain that MSP's case should also remain in this jurisdiction.

Second, Plaintiff's only argument in support of why MSP's case should remain in the Southern District of Florida (along with his own case) is that MSP's principal place of

business is in Florida. This would be more compelling if MSP's business activities occurred exclusively in Florida. However, a review of MSP's complaint reveals that in the illustrative examples alone, MSP's claims against Pfizer arise from transactions in Rhode Island, Florida, New York, Ohio, and Connecticut. [1:21-CV-23676 (S.D. Fla.) ECF No. 1, ¶¶ 24-36]. Thus, the Undersigned is unconvinced that MSP's relationship with the Southern District of Florida is so unique and powerful that its pending lawsuit constitutes a compelling circumstance to not apply the first-to-file rule.

Finally, Plaintiff has failed to demonstrate that his and MSP's cases would even be heard by the same judge in the Southern District of Florida. Unlike the two cases in the Southern District of New York, which are all currently pending in front of Senior United States District Court Judge Denise L. Cote, the Chantix cases in this jurisdiction are each assigned to a different judge, one of whom has already denied a motion to transfer. Although there is a pending motion to consolidate, if it is denied, it leaves both Plaintiff and Defendant at risk of piecemeal uncoordinated litigation.

d.  U.S.C. § 1404 Factors

As Plaintiff's final argument, he claims that "courts in this District apply [the U.S.C. § 1404 factors] in deciding whether to apply the first-filed rule" and that these factors weigh against transfer. In support of his position, Plaintiff cites *Brigade Holdings, Inc. v. Aegis Bus. Credit, LLC*, No. 8:21-CV-609-TPB-SPF, 2021 WL 3788952, at *1 (M.D. Fla. Aug. 26, 2021). The decision to weigh these factors to determine if compelling

circumstances exist is discretionary. *CSX Intermodal Terminals, Inc. v. Nickolas Savko & Sons, Inc.*, No. 3:18-CV-96-J-34PDB, 2018 WL 4932891, at *2, (M.D. Fla. May 21, 2018) ("In determining whether an exception to adherence to the first-filed rule is warranted, courts may consider the same factors applicable to motions to transfer under 28 U.S.C. § 1404(a)." (citing *Collegiate Licensing Co.*, 713 F.3d at 79)).

Bad faith negotiations, anticipatory suits, and forum shopping are only illustrative examples of "compelling circumstances." *Orbsat Corp. v. Seifert*, No. 1:21-CV-22436, 2021 WL 5771150, at *2 (S.D. Fla. Dec. 6, 2021) ("Compelling circumstances include, for example, "bad faith negotiations, an anticipatory suit, and forum shopping."). "Other courts have found compelling circumstances based on 'the convenience of the parties and the second-filed forum's connection with the controversy.'" *Elliott v. Williams*, No. 20-81280-CIV, 2021 WL 1998411, at *5 (S.D. Fla. May 19, 2021) (quoting *Lexington Ins. Co. v. Proformance Plastering of Pensacola*, Inc., 2013 WL 12155502, at *2 (M.D. Fla. Oct. 9, 2013)).

Outside of these specific considerations, compelling circumstances can be found when the interests of justice require. As stated by the Eighth Circuit, the first-filed rule "must yield to the interests of justice, and will not be applied where a court finds compelling circumstances supporting its abrogation." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993).

Although Defendant carries the burden of establishing these factors when seeking transfer under U.S.C. § 1404, Plaintiff, as the party attempting to rebut the first-to-file

rule, shoulders the burden when assessing the factors for the purpose of determining whether a compelling circumstance exists.

Under U.S.C. § 1404,

[t]o determine whether the convenience of the parties and witnesses and the interest of justice favor transfer, a court considers: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Rojas*, 2019 WL 6324616, at *3 (citing *Manuel*, 430 F.3d at 1135 n.1).

Both parties address the U.S.C. § 1404 factors in only the context of transferring the case under that statute. Despite this, assessing these arguments in the context of the first-to-file rule is straightforward because the change is only which party bears the burden. Here, Plaintiff argues that the first, third, fourth, fifth, sixth, eighth, and ninth factors weigh against transferring this case to the Southern District of New York. Plaintiff also contends that the second factor should be given no weight. In Defendant's view, the first, second, third, fourth, and ninth factors weigh in favor of transferring the case. Defendant believes the fifth and sixth factors are neutral, and the eighth factor should be given no weight. Both parties agree the seventh factor is neutral.

       *i.  Convenience of the Witnesses*

23

Plaintiff has failed to meet its burden to establish that the first factor falls in his favor. The Undersigned finds his argument about the location of his healthcare provider and pharmacy unavailing. Plaintiff seeks to represent a nationwide class -- where everyone would have their own healthcare provider and pharmacy -- so the location of Plaintiff's witnesses, if they are even necessary to the case, is not a factor in his favor. Likewise, the fact that MSP is in Florida is equally unavailing because, not only does it seek to represent a nationwide class, but it also represents insurance carriers nationwide as part of its business.

To contrast, this factor falls in Defendant's favor "[b]ecause this is a putative class action challenging the safety and labeling of Pfizer's product, the majority of witnesses and documents at issue are likely to be at Pfizer and Pfizer's headquarters is in the [Southern District of New York]." [ECF No. 9]. In the Undersigned's view, it seems likely that many, if not most, of the witnesses will be Pfizer employees and contractors.

*ii. Location of Relevant Documents*

This factor is neutral. As stated by United States District Judge K. Michael Moore, "[i]n most cases today, including this one, technological advancements have rendered the physical location of documents and other types of proof virtually irrelevant." *Ritter v. Metroplitan Cas. Ins. Co.*, No. 4:19-CV-10105-KMM, 2019 WL 8014511, at *4 (S.D. Fla. Dec. 3, 2019); *see also Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-CV-80813-KMM, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) ("In a world with fax machines, copy machines,

email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant. In light of the burden a party moving for transfer bears, absent a showing by the moving party to the contrary, this Court considers the location of relevant documents and the relative ease of access to sources of proof a non-factor.").

### iii.  Convenience of the Parties

Plaintiff has failed to meet its burden to establish that this factor constitutes or contributes to a finding of a compelling circumstance. Plaintiff argues that Defendant's "transfer motion simply seeks to shift the inconvenience on itself litigating in Florida to Plaintiff Abreu litigating in New York." [ECF No. 18]. Even if this is true, Plaintiff's "testimony [on the substantive merits] is unlikely to be required as he is merely a class representative." *Balloveras v. Purdue Pharma Co.*, No. 04-20360-CIV-MORENO, 2004 WL 1202854, at *2 (S.D. Fla. May 19, 2004). The same holds true for the other litigants in this action, as they all seek to represent a class of individuals. Further, MSP's position on this point is even weaker than Plaintiff's because, like Pfizer, it is a corporation.

### iv.  Locus of Operative Facts

In support of his argument on this factor, Plaintiff claims the "locus" of operative facts is in the prescription and purchase of Chantix. However, Plaintiff has not named his doctor and pharmacy as defendants. Instead, his complaint focuses on the manufacture, advertisement, distribution, and recall of Chantix. [ECF No. 1]. Plaintiff has offered no

explanation for how the testimony of his doctor and pharmacy will even be relevant --
and he certainly has not established that their involvement is the locus of this dispute.

Defendant, on the other hand, has made an adequate showing that New York is
more likely to be the locus of the dispute. It is the Defendant's *creation* of the drug that is
the subject of this dispute. The easy conclusion is that Defendant -- in a lawsuit about a
drug it created -- will have most of the relevant information. *Rojas*, 2019 WL 6324616, at
*4 ("The nature of the claims indicates that the locus of the operative facts is where
Defendants are.").

### v.   *Availability of Process*

Plaintiff has failed to put forth any meaningful argument as to why this factor falls
in his favor. He again focuses on the prescribing doctor and pharmacy and says
Defendant "makes no showing how any non-party Florida witnesses could be compelled
to testify at a trial in New York." [ECF No. 18]. Even if this is true, Plaintiff has put
forward no evidence that these are necessary witnesses, that there would be any difficulty
procuring their attendance at a trial or that the testimony could not be presented for trial
purposes through a videotaped deposition.

### vi.   *Relative Means of the Parties*

Plaintiff has established that the sixth factor falls in his favor. Pfizer is a
multinational corporation with vast resources and Plaintiff, even when acting as class
representative, is certain to have less resources available to him. However, the

Undersigned affords this factor no weight in the context of the first-to-file rule. If this factor alone could militate against applying the first-to-file rule, then it would enable putative class action plaintiffs to engage in classic forum shopping without fear of transfer based solely on the fact that the lawsuit is against a wealthy corporation.

### vii.   Forum's Familiarity with Governing Law

The seventh factor weighs in favor of neither party. Both the Southern District of Florida and the Southern District of New York are more than capable of applying the law in this case.

### viii.   Plaintiff's Choice of Forum

The eighth factor warrants very little consideration in the class action context. Plaintiff claims that his "choice of forum should be accorded significant weight and typically not disturbed absent other significant considerations." [ECF No. 18]. To support this proposition, Plaintiff cites multiple cases -- none of which address the factor in the class action context.

When assessing a class action plaintiff's choice of forum, "the plaintiff's choice of forum is given less than normal deference." *Balloveras*, 2004 WL 1202854, at *1. Moreover, "a plaintiff's choice of a forum warrants less deference if 'there is any indication that plaintiff's choice of forum is the result of forum shopping.'" *Clinton v. Sec. Benefit Life Ins. Co.*, No. 19-24803-CIV, 2020 WL 6120565, at *8 (S.D. Fla. June 29, 2020), report and recommendation adopted, No. 19-24803-CIV, 2020 WL 6120554 (S.D. Fla. July 21, 2020)

(quoting *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)). This preference is further undercut when the locus of operative facts "underlying the action occurred outside the district in which the action is brought." *Balloveras*, 2004 WL 1202854, at *1.

All three of these considerations exist in the instant case. On these facts, the Undersigned affords no weight to Plaintiff's choice of forum.

### ix. Trial Efficiency and the Interests of Justice

The interests of justice do not militate against transfer. Only a single factor falls in Plaintiff's favor and there is ample indicia of forum shopping based on the seven other pending lawsuits filed by Plaintiff's counsel. The other factors either fall in Defendant's favor or remain neutral. Establishing a compelling circumstance requires Plaintiff to make more of a showing than he has done so here.

## IV.    Conclusion

Defendant has established all the necessary criteria under the first-to-file rule. Plaintiff's arguments against Defendant's request are unconvincing. Therefore, the Undersigned finds that there is no compelling circumstance rebutting the application of the first-to file rule.[7]

---

[7]    Because the Court has found that the first-to-file rule applies, it is unnecessary to address whether it would also be appropriate to transfer the case pursuant to U.S.C. § 1404. *See, e.g., Steelers Keys, LLC v. High Tech Nat'l, LLC*, No. 19-23630, 2019 WL 6609214, at *3 (S.D. Fla. Dec. 4, 2019) ("The Plaintiffs assert that the traditional § 1404 factors militate against transfer. The Plaintiffs, however, fail to cite a case in which the first-to-file rule was defeated by a venue analysis under the § 1404 factors. Defendants often move, on an alternative basis, to transfer under § 1404. In such cases, courts decline to

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that

Defendant's motion to transfer is **GRANTED**.[8]

 

**DONE AND ORDERED**, in Chambers, in Miami, Florida, on February 16, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record

---

address the § 1404 factors when the first-to-file rule is dispositive."); *Lianne Yao*, 2018 WL 4208324, at *1 n.1 ("Because transfer is warranted under the first-to-file rule, the Court does not address the parties' arguments under 28 U.S.C. section 1404(a).").

[8]    Under the Court's Local Rules (i.e., Magistrate Judge Local Rule 4(a)), however, a party has the right to within 14 days appeal a non-dispositive Order to the District Judge, who may then review any objections under a clearly erroneous or contrary to law standard. The Undersigned will therefore not direct the Clerk to transfer this case for 14 days, to allow Plaintiff the opportunity to file his Objections with Judge Moreno.