UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 21-62122-CIV-MORENO/GOODMAN

JUAN ABREU, individually, and on behalf of
all others similarly situated,

      Plaintiff,

v.

PFIZER, INC.,

      Defendant.

_____/

**OMNIBUS REPORT AND RECOMMENDATIONS ON PLAINTIFF'S
MOTION FOR RECONSIDERATION ON MOTION TO CHANGE VENUE
AND ON DEFENDANT'S MOTION TO TRANSFER PURSUANT TO
28 U.S.C. § 1404(a)**

Plaintiff Juan Abreu filed this putative class-action lawsuit against Defendant

Pfizer, Inc. based on claims surrounding Defendant's production and voluntary recall of

Chantix, a drug developed to assist individuals with combatting nicotine addiction. [ECF

No. 1]. Within a month of Plaintiff's Complaint being filed, Defendant filed a Motion to

Change Venue, seeking to transfer this matter to the Southern District of New York,

where it contended an earlier-filed class-action lawsuit is pending. [ECF No. 9].

The Undersigned previously entered an Order granting Defendant's motion under the first-to-file rule. [ECF No. 37]. Plaintiff filed objections which he also asked be treated as a motion for reconsideration, arguing, in part, that the relevant facts had changed and that the first-to-file rule no longer applied. [ECF No. 43]. Defendant filed a response to Plaintiff's objections [ECF No. 47] and Plaintiff filed a reply [ECF No. 49].

Senior United States District Judge Federico A. Moreno held a hearing on Plaintiff's objections. [ECF Nos. 51; 53]. Following the hearing, Judge Moreno entered an Order designating the prior Order to transfer as a Report and Recommendations[1] and permitting "either side to move to reconsider" the newly-designated Report and Recommendations and "either party to file a motion to transfer under 28 U.S.C. § 1404." [ECF No. 52].

As allowed by the Order, Plaintiff filed a Motion for Reconsideration. [ECF No. 55]. Defendant filed a response [ECF No. 56] and Plaintiff filed a reply [ECF No. 59]. Defendant also filed a Motion to Transfer Under 28 U.S.C. § 1404. [ECF No. 61]. This motion is also fully briefed with a response [ECF No. 63] and reply [ECF No. 64].

Although not expressly contemplated by Judge Moreno's Order, MSP Recovery Claims Series 44, LLC and MSP Recovery Claims, Series LLC (collectively, "MSP") filed

---

[1]     Although the Undersigned's prior determination is titled as an "Order," the Undersigned will refer to it as a Report and Recommendations throughout this Omnibus Report and Recommendations.

a Renewed Motion to Intervene to Oppose Defendant's Motion to Change Venue. [ECF No. 55].[2] MSP filed an earlier motion to intervene [ECF No. 20] which was denied when Judge Moreno adopted without objection the Undersigned's Report and Recommendations [ECF Nos. 34; 50]. MSP's renewed motion is fully briefed with a response [ECF No. 60] and reply [ECF No. 62].

Judge Moreno referred to the Undersigned for a Report and Recommendations both Plaintiff's Motion to Reconsider and Defendant's Motion to Transfer Under 28 U.S.C. § 1404. [ECF No. 52].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's Motion for Reconsideration and **grant** Defendant's Motion to Transfer Under the First-Filed Rule. The Undersigned also **respectfully recommends** that the District Court **grant** Defendant's Motion to Transfer Under 28 U.S.C. § 1404.

## I.    Background

In the Undersigned's previous Report and Recommendations, I summarized the relevant litigation background as follows:

> This case is one of a series of putative class-action cases filed nationwide after Defendant recalled "Chantix," a drug it had developed to assist users quit smoking. Based on the Plaintiff's and Defendant's filings [ECF Nos. 9;

---

[2]    The Undersigned previously addressed this motion in a separately-issued Report and Recommendations. [ECF No. 65].

18], the Undersigned has identified the following cases filed by end-user plaintiffs since Defendant's recall of Chantix[3]:

> *Harris v. Pfizer, Inc.*, 1:21-cv-06789 (S.D.N.Y.) (filed August 12, 2021)
> *Edwards v. Pfizer, Inc.*, 2:21-CV-4275 (E.D. Pa.) (filed September 29, 2021)
> *Jacobson v. Pfizer, Inc.*, 2:21-CV-7961 (C.D. Cal.) (filed October 5, 2021)
> *Webb v. Pfizer, Inc.*, 1:21-CV-8244 (S.D.N.Y.) (filed October 6, 2021)
> *Seeley v. Pfizer, Inc.*, 3:21-CV-7892 (N.D. Cal.) (filed October 7, 2021)
> *Duff v. Pfizer, Inc.*, 2:21-CV-1350 (W.D. Pa.) (filed October 8, 2021)
> *Abreu v. Pfizer, Inc.*, 0:21-CV-62122 (S.D. Fla.) (filed October 12, 2021)
> *Evans v. Pfizer, Inc.*, 3:21-CV-1263 (S.D. Ill.) (filed October 15, 2021)
> *Houghton v. Pfizer, Inc.*, 1:21-CV-23987 (S.D. Fla.) (filed November 12, 2021)

In addition to these nine class action cases, MSP also filed a putative class action lawsuit against Defendant, seeking to represent itself and similarly situated third-party payors. MSP's lawsuit is currently pending in the Southern District of Florida with United States District Court Judge Roy K. Altman: *MSP Recovery Claims Series 44, LLC v. Pfizer Inc.*, No. 1:21-CV-23676 (S.D. Fla.) (filed October 19, 2021). Based on the representations of Plaintiff and MSP, this is the only third-party payor lawsuit against Pfizer currently pending. [ECF Nos. 18; 20; 29].

The majority of these cases have been stayed pending the resolution of Defendant's motion to transfer. Collectively, the universe of plaintiffs are represented by three law firms:

<u>Bursor and Fisher, P.A.</u>
> *Harris v. Pfizer, Inc.*, 1:21-cv-06789 (S.D.N.Y.) (filed August 12, 2021)

---

[3]     The Undersigned is permitted to take judicial notice of these other related lawsuits. *See DeBose v. Ellucian Co., L.P.*, 802 F. App'x 429, 434 (11th Cir. 2019) (noting that the "district court . . . properly took judicial notice of the pleadings and orders in [plaintiff]'s earlier federal case stemming from her allegedly wrongful termination, as the records in that case were not subject to reasonable dispute"); *Bakov v. Consol. Travel Holdings Grp., Inc.*, No. 19-CV-61509-WPD/SNOW, 2020 WL 9934410, at *1, n.1 (S.D. Fla. Apr. 9, 2020) ("The court may take judicial notice of another court's docket entries and orders for the limited purpose of recognizing the filings and judicial acts they represent.").

*Houghton v. Pfizer, Inc.*, 1:21-CV-23987 (S.D. Fla.) (filed November 12, 2021) (stayed [1:21-CV-23987 (S.D. Fla.) ECF No. 11][4])

<u>Honik LLC</u>

*Edwards v. Pfizer, Inc.*, 2:21-CV-4275 (E.D. Pa.) (filed September 29, 2021) (stayed [2:21-CV-4275 (E.D. Pa.) ECF No. 6])

*Jacobson v. Pfizer, Inc.*, 2:21-CV-7961 (C.D. Cal.) (filed October 5, 2021) (voluntarily dismissed after stay denied [2:21-CV-7961 (C.D. Cal.) ECF Nos. 22; 23])

*Webb v. Pfizer, Inc.*, 1:21-CV-8244 (S.D.N.Y.) (filed October 6, 2021) (stayed [1:21-CV-8244 (S.D.N.Y.) ECF No. 13])

*Seeley v. Pfizer, Inc.*, 3:21-CV-7892 (N.D. Cal.) (filed October 7, 2021) (stayed [3:21-CV-7892 (N.D. Cal.) ECF Nos. 16; 17])

*Duff v. Pfizer, Inc.*, 2:21-CV-1350 (W.D. Pa.) (filed October 8, 2021) (stayed [2:21-CV-1350 (W.D. Pa.) ECF No. 8])

*Abreu v. Pfizer, Inc.*, 0:21-CV-62122 (S.D. Fla.) (filed October 12, 2021)

*Evans v. Pfizer, Inc.*, 3:21-CV-1263 (S.D. Ill.) (filed October 15, 2021) (stayed [3:21-CV-1263 (S.D. Ill.) ECF Nos. 8; 11])

<u>Rivero Mestre</u>

*MSP Recovery Claims Series 44, LLC v. Pfizer Inc.*, No. 1:21-CV-23676 (S.D. Fla.) (filed October 19, 2021)

Two of the three firms each represent a separate Southern District of New York plaintiff and a separate Southern District of Florida plaintiff. These two firms, along with MSP's law firm, have filed a motion to consolidate their three Southern District of Florida cases and appoint all three firms as class counsel. [ECF No. 24]. According to Plaintiff, all class counsel and the plaintiffs throughout the nation have been informally coordinating and jointly agreed that this jurisdiction and this case is the appropriate forum within which to prosecute their claims against Pfizer. Currently, however, all three Southern District of Florida cases are assigned to different judges.

Pfizer, on the other hand, desires for this case to move forward in the Southern District of New York, where *Harris* was filed more than a month and a half before *Evans* (the next earliest-filed case) and two months before

---

[4]      In this Order, citations to docket entries in other cases (and jurisdictions) will contain the case number and jurisdiction before the CM/ECF Number. Citations to docket entries in this case will contain only the CM/ECF Number.

this case was filed. In *Harris*, the plaintiff has filed a complaint and amended complaint [1:21-cv-06789 (S.D.N.Y.) ECF Nos. 1; 24], Pfizer has filed an Answer [1:21-cv-06789 (S.D.N.Y.) ECF No. 23], and there is a fully briefed motion to dismiss [1:21-cv-06789 (S.D.N.Y.) ECF Nos. 30; 33; 36].

Unlike the other end-user plaintiffs, MSP is the outlier plaintiff in that it seeks to represent "a class of similarly situated third-party payers." [1:21-CV-23676 (S.D. Fla.) ECF No. 1]. MSP represents the interests of various Medicare Advantage plans and healthcare benefit providers (collectively, "insurance carriers") through assignment, including the right to recover. [1:21-CV-23676 (S.D. Fla.) ECF No. 1, ¶¶ 17-23]. A sample of the insurance carriers who have assigned their rights to MSP includes: Blue Cross & Blue Shield of Rhode Island; Health First Health Plans, a central Florida insurance carrier; EmblemHealth, a New York insurance carrier; Summacare, an Ohio-based insurance carrier; and Connecticare, a Connecticut based insurance carrier. [1:21-CV-23676 (S.D. Fla.) ECF No. 1, ¶¶ 24-36].

In MSP's case, United States District Court Judge Roy K. Altman denied MSP's request to transfer its case to United States District Judge Federico A. Moreno, the presiding judge in the instant case. [1:21-CV-23676 (S.D. Fla.) ECF Nos. 7; 15].

[ECF No. 37 (footnotes in original)].

As argued by Plaintiff during the hearing, since the Undersigned entered the earlier Report and Recommendations that the case be transferred to the Southern District of New York, "the world has changed." [ECF No. 53]. Because of these changes, the above recitation of the facts is no longer completely accurate. Specifically, the following relevant events have occurred: (1) United States District Court Judge Denise L. Cote dismissed the *Harris* action with prejudice in a twenty-six-page Order [1:21-cv-06789 (S.D.N.Y.) ECF No. 39]; (2) Plaintiff's counsel, Honik LLC, voluntarily dismissed the *Webb* action [1:21-CV-8244 (S.D.N.Y.) ECF Nos 15; 16]; and (3) all three Pfizer-related Florida cases have

been transferred to Judge Moreno [1:21-cv-23676 (S.D. Fla) ECF No. 17; 1:21-CV-23987 (S.D. Fla.) ECF No. 15].

Plaintiff argues, in part, that these factual developments support reconsideration of the Undersigned's prior finding that transfer is appropriate under the first-filed rule. Defendant opposes this view and believes that transfer under the first-filed rule is still appropriate. Defendant also argues that even if transfer is no longer appropriate under the first-filed rule, the case should still be transferred under 28 U.S.C. § 1404.

## II.   Legal Standard

### a.   The First-Filed Rule

"The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit.").

The first-to-file rule "not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Collegiate Licensing Co.*, 713 F.3d at 78. The rule was developed because

"[c]ompeting lawsuits involving the same parties and the same issues in separate jurisdictions waste judicial resources and can lead to conflicting results." *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012).

The Court must consider three factors when evaluating the first-to-file rule: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Women's Choice Pharms., LLC v. Rook Pharms., Inc.*, No. 16-cv-62074, 2016 WL 6600438, at *2 (S.D. Fla. Nov. 8, 2016); *Chapman v. Progressive Am. Ins. Co.*, 2017 WL 3124186, at *1 (N.D. Fla. July 24, 2017).

If the court finds that the first-to-file rule applies, then the party objecting to jurisdiction in the first-filed forum bears the burden of demonstrating that "compelling circumstances" support an exception to the rule. *Lianne Yao v. Ulta Beauty Inc.*, No. 18-22213-CIV, 2018 WL 4208324, at *1 (S.D. Fla. Aug. 8, 2018). "Compelling circumstances include bad faith negotiations, an anticipatory suit, and forum shopping." *Belacon Pallet Servs, LLC v. Amerifreight, Inc.*, No. 15cv191, 2016 WL 8999936, at *4 (N.D. Fla. Mar. 26, 2016). (citation omitted). If the presumption holds, then the district court can either stay, dismiss, or transfer the second-filed case to the forum in which the first-filed action is pending. *See Futurewei Tech., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 709 (Fed. Cir. 2013).

The rule does not require rigid or inflexible application but should, instead, be applied in a manner that best serves the interests of justice. *See Philibert v. Ethicon, Inc.*, No. 04-81101, 2005 WL 525330, at *1 (S.D. Fla. Jan. 14, 2005); *Carl v. Republic Sec. Bank*, No.

018981CIVHURLEY, 2002 WL 32167730, at *3 (S.D. Fla. Jan. 22, 2002). Thus, although the forum where the first-filed case resides is typically given priority, it is appropriate to depart from the rule "when there is a showing that the balance of convenience tips in favor of the second forum or that there are special circumstances which justify giving priority to the second action." *Philibert*, 2005 WL 525330, at *1 (citing *Carl*, 2002 WL 32167730, at *3).

  b. <u>28 U.S.C. Section 1404(a)</u>

 A district court "may transfer any civil action to any other district or division where it might have been brought" if the transfer would make the litigation more convenient or would otherwise serve the interests of justice. 28 U.S.C. § 1404(a); *In re Ricoh Corp.*, 870 F.2d 570, 572 (11th Cir. 1989). The Court considers nine factors when assessing whether transfer would serve the interests of justice:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel*, 430 F.3d at 1135 n.1.

 "[C]ourts have wide discretion to evaluate the interests of justice and convenience on a case-by-case basis." *Beckman Coulter, Inc. v. Sysmex America, Inc.*, No. 17-24049-CIV, 2018 WL 4901407, at *3 (S.D. Fla. Sept. 26, 2018) (quoting *Manuel*, 430 F.3d at 1135 n.1).

This discretionary decision will not be disturbed absent abuse. *Pinson v. Rumsfeld*, 192 F.

App'x 811, 817 (11th Cir. 2006).

### III.   Analysis

Defendant seeks to transfer this case under either the first-to-file rule or under 28

U.S.C. § 1404. In Defendant's view, not only is the Southern District of New York the

location where the first Chantix case was filed -- and the only jurisdiction in which every

plaintiff could transfer their case -- it is also the most well-situated jurisdiction to handle

these cases. According to Plaintiff, neither of these transfer principles apply and

Defendant is attempting to subvert informal coordination efforts by the three plaintiff's

counsel to make the Southern District of Florida the operative jurisdiction.

The Undersigned previously determined that transfer was appropriate under the

first-to-file rule and declined to address whether it was appropriate to transfer the case

under 28 U.S.C. § 1404. In assessing the first-to-file rule, the Undersigned relied on the

facts as they existed at the time of the ruling. Plaintiff claims now that the central facts

have changed so substantially that the Undersigned should revisit my earlier ruling. For

the reasons discussed below, the Undersigned is not persuaded by Plaintiff's position

and concludes that transfer to the Southern District of New York is appropriate under

both the first-to-file rule and 28 U.S.C. § 1404.

a.  <u>First-Filed Rule</u>

10

Plaintiff contends that the dismissals of the *Harris* and *Webb* actions in the Southern District of New York mean that the "first-filed rule no longer applie[s]" because "no earlier-filed case remains pending there." [ECF No. 54]. Plaintiff also argues that the Undersigned should supplement the Report and Recommendations to reflect that it is Defendant's "burden to prove transfer under § 1404." *Id.* In Defendant's view, the motion for reconsideration is not well taken because "(1) judicial economy, consistency, and comity weigh in favor of applying the first-to-file rule, especially where the first-filed case was dismissed on the merits, and (2) *Harris* was pending at the time of this Court's February 16 ruling." [ECF No. 56].

i. <u>Relevant Procedural Background</u>

Before addressing the merits of Plaintiff's request for reconsideration, it is necessary to resolve the parties' conflicting factual interpretations. According to Plaintiff, *Harris* was dismissed *before* the instant case was transferred to the Southern District of New York. [ECF Nos. 54; 59]. Defendant, however, argues that *Harris* was *pending* when this Court ruled that this case should be transferred. [ECF No. 56].

The Undersigned issued an Order transferring this instant case to the Southern District of New York. In the Order, the Undersigned acknowledged that there is a split of authority on the issue of whether an Order was appropriate. Because of this split, the Undersigned cross-designated the Order as a contingent Report and Recommendations. Judge Moreno ultimately decided to treat the Order as a Report and Recommendations.

11

In sum, the previously entered Order has been re-defined as a Report and Recommendations and the Clerk **prematurely** transferred this case to the Southern District of New York.

Thus, the Undersigned finds that *Harris* and *Webb* were both dismissed *before* this case was properly transferred to the Southern District of New York. Ultimately, this distinction does not have an impact on the Undersigned's conclusion. However, because the reconsideration request rests largely on the dismissals, it is necessary to properly define the relevant procedural background.

## ii.   First Filed Rule Factors

Plaintiff's request for reconsideration is premised on the dismissal of the earlier-filed Southern District of New York cases. Plaintiff claims that "[i]t is well-established in the Southern District of Florida that the first-filed rule does not apply once the related case has been dismissed." [ECF No. 52] Thus, in Plaintiff's view, dismissal of the earlier filed action *precludes* the Court from applying the first-filed rule. Defendant takes a contrary position and argues that "a court is not stripped of its discretion to apply the first-to-file rule even though the first-filed action is no longer pending." [ECF No. 56 (quoting *Young v. L'Oreal USA, Inc.*, 526 Supp. 2d 700, 706 (N.D. Cal. 2021))].

Plaintiff's argument rests almost-exclusively on now-Chief United States Magistrate Judge Edwin G. Torres' decision in *Young v. W. Publ'g Corp.*, No. 09-22426-CIV, 2010 WL 11597583, at *1 (S.D. Fla. Jan. 6, 2010). Plaintiff's reliance on *Young*,

however, is based on a flawed interpretation that the *Young* Court supposedly held that the first-filed rule no longer applies if the earlier filed case is dismissed.

As noted previously, application of the first-filed rule requires a two-part analysis. The first part -- whether the movant has established that there was an earlier filed case dealing with the same parties and the same issues -- determines whether a court *can* apply the first-filed rule. The second part -- whether the non-movant has established that the interests of justice militate against transfer -- determines whether a court *should* apply the first-filed rule. Here, Plaintiff argues that the dismissal of the earlier filed action means the rule no longer applies -- i.e., the court *cannot* apply the first-file rule. *Young* doesn't support this proposition.

In *Young*, Judge Torres begins his analysis by noting that "[i]n determining the applicability of the rule, a court should consider: 1) the chronology of events; 2) the similarity of the parties involved; and 3) the similarity of the issues or claims at stake." 2010 WL 11597583, at * 2. On that point, Judge Torres found that two of the three factors necessary for the applicability of the first-to-file rule were present but that the defendant had failed to establish that the parties were substantially similar. *Id.* Because of this, the *Young* Court found that the first-to-file rule was not applicable. *Id.*

In the portion of the opinion highlighted by Plaintiff, the *Young* Court offers the following alternative as a potential reason to *decline* the application of the first-to-file rule:

> Finally, the fact that the [earlier-filed action] was dismissed and is no longer pending is another reason to decline the application of the first-to-file rule.

> The rationale behind the first-to-file rule is related to the doctrine of collateral estoppel.
>
> ***
> The fact that the [earlier-filed action] is no longer pending, thus eliminating the danger of inconsistent judgments between the same parties on the same issues and claims, mitigates against the application of the first-to-file rule here.

*Id.* at *3.

Plaintiff's reliance on this language suffers from two flaws. First, the *Young* Court's analysis does not support Plaintiff's contention that the dismissal of the earlier-filed action means that the first-filed rule cannot apply. At most, it can be said that the *Young* Court determined that dismissal of an earlier-filed action is a *factor* to consider in determining whether the first-filed rule should apply. On the issue of applicability, the *Young* Court found that the similarity of the parties was the only missing factor.[5]

Second, the section of the opinion upon which Plaintiff relies is dicta. *United States v. Kaley*, 579 F.3d 1246, 1253 (11th Cir. 2009) ("As our cases frequently have observed, dicta is defined as those portions of an opinion that are 'not necessary to deciding the

---

[5]     Plaintiff has not challenged or sought reconsideration of the Undersigned's earlier finding that the parties were similar, that the claims were similar, or that *Harris* predates the instant case. *See* [ECF Nos. 43 (objecting to the issuance of an Order instead of a Report and Recommendations, the first-filed rule being applied once the earlier-filed case was dismissed, and placing the burden of the § 1404 factors in the context of the first-filed rule on Plaintiff instead of Defendant); 54 (requesting reconsideration of the Undersigned's determination that the first-filed rule applies on the grounds that the earlier-filed case was dismissed and of the determination that burden of the § 1404 factors in the context of the first-filed rule rests on Plaintiff instead of Defendant)].

case then before us.'" (citing *United States v. Eggersdorf*, 126 F.3d 1318, 1322 n.4 (11th Cir.

1997)). In a later opinion, Judge Torres relied on Senior United States Circuit Court Judge

Edward E. Carnes in assessing the weight afforded to dicta:

> Judge Carnes succinctly synthesized the value of dicta as being a nullity:
> "[D]icta is not binding on anyone for any purpose. *See, e.g.*, *McNely v. Ocala
> Star–Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) ("[W]e are not required
> to follow dicta contained in our own precedents"); *Great Lakes Dredge &
> Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992)
> (because what is said in a prior opinion about a question not presented
> there is dicta, and dicta is not binding precedent, a later panel is "free to
> give that question fresh consideration").

*Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2014 WL 1319307, at *5

(S.D. Fla. Mar. 31, 2014), aff'd, No. 07-22988-CIV, 2015 WL 1401903 (S.D. Fla. Mar. 24,

2015), aff'd sub nom. *Buckley Towers Condo., Inc. v. Rosenbaum Mollengarden PLLC*, 661 F.

App'x 564 (11th Cir. 2016), and aff'd sub nom. *Buckley Towers Condo., Inc. v. Rosenbaum

Mollengarden PLLC*, 661 F. App'x 564 (11th Cir. 2016) (quoting *Edwards v. Prime, Inc.*, 602

F.3d 1276, 1298 (11th Cir. 2010)).

Because Plaintiff's grounds for seeking reconsideration on the issue of whether the

first-filed rule *applies* is based only on the dismissal of the earlier-filed action and Plaintiff

has presented no binding authority[6] holding that dismissal of the earlier filed action

---

[6]     There are also other non-binding district court cases which undermine *Plaintiff's*
position. *See, e.g.*, *Kadant Johnson, Inc. v. D'Amico*, No. 2:10-cv 577, 2010 WL 3522068 (M.D.
Ala. Sept. 1, 2010) (rejecting request to reconsider transfer order, holding that "[t]he fact
that the first-filed case was **dismissed on the same day** as this Court's order transferring
the case does not cause the court to reconsider its decision to transfer." (emphasis
added)); *Young v. L'Oreal*, 526 Supp. 2d 700, 706 (N.D. Cal. 2021).

*precludes* a finding that any of the three factors necessary for the application of the first-filed rule exist, the Undersigned rejects Plaintiff's request to reconsider the determination that the first-filed rule applies.

Having found that Plaintiff has not presented a sufficient basis to reconsider whether the first-filed rule applies, I now turn to the issue of whether the first filed rule *should* apply.

iii.  Compelling Circumstances

Because the earlier finding that Defendant has established all three first-filed factors is undisturbed, the burden now shifts to Plaintiff to establish that "compelling circumstances" exist to warrant an exception to the first-filed rule. *Manuel*, 430 F.3d at 1135 ("[W]e require that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule.").

"Compelling circumstances include bad faith negotiations, an anticipatory suit, and forum shopping." *Chaban Wellness LLC v. Sundesa, LLC*, No. 15-CV-21497, 2015 WL 4538804, at *2 (S.D. Fla. July 27, 2015) (citing *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991)).

These examples, however, are only illustrative. The first-to-file rule is not a rule which is rigid or inflexible; it should "be applied in a manner that best serves the interests

of justice." *Attix v. Carrington Mortg. Servs., LLC*, No. 1:20-CV-22183-UU, 2020 WL 9849821, at *3 (S.D. Fla. Oct. 13, 2020). Accordingly,

> while the forum where an action is first filed typically is given priority over subsequently-filed actions, it is appropriate to depart from the general rule when there is a showing that the balance of convenience tips in favor of the second forum or that there are special circumstances which justify giving priority to the second action.

*Philibert*, 2005 WL 525330, at *1.

Plaintiff also requests that the Undersigned reconsider my decision to place with him the burden to prove that transfer is not warranted based on the 28 U.S.C. § 1404 factors. The original Report and Recommendations stated the following on this issue:

> As Plaintiff's final argument, he claims that "courts in this District apply [the U.S.C. § 1404 factors] in deciding whether to apply the first-filed rule" and that these factors weigh against transfer. In support of his position, Plaintiff cites *Brigade Holdings, Inc. v. Aegis Bus. Credit, LLC*, No. 8:21-CV-609-TPB-SPF, 2021 WL 3788952, at *1 (M.D. Fla. Aug. 26, 2021). The decision to weigh these factors to determine if compelling circumstances exist is discretionary. *CSX Intermodal Terminals, Inc. v. Nickolas Savko & Sons, Inc.*, No. 3:18-CV-96-J-34PDB, 2018 WL 4932891, at *2, (M.D. Fla. May 21, 2018) ("In determining whether an exception to adherence to the first-filed rule is warranted, courts may consider the same factors applicable to motions to transfer under 28 U.S.C. § 1404(a)." (citing *Collegiate Licensing Co.*, 713 F.3d at 79)).

> Bad faith negotiations, anticipatory suits, and forum shopping are only illustrative examples of "compelling circumstances." *Orbsat Corp. v. Seifert*, No. 1:21-CV-22436, 2021 WL 5771150, at *2 (S.D. Fla. Dec. 6, 2021) ("Compelling circumstances include, for example, "bad faith negotiations, an anticipatory suit, and forum shopping."). "Other courts have found compelling circumstances based on 'the convenience of the parties and the second-filed forum's connection with the controversy.'" *Elliott v. Williams*, No. 20-81280-CIV, 2021 WL 1998411, at *5 (S.D. Fla. May 19, 2021) (quoting

*Lexington Ins. Co. v. Proformance Plastering of Pensacola*, Inc., 2013 WL 12155502, at *2 (M.D. Fla. Oct. 9, 2013)).

Outside of these specific considerations, compelling circumstances can be found when the interests of justice require. As stated by the Eighth Circuit, the first-filed rule "must yield to the interests of justice, and will not be applied where a court finds compelling circumstances supporting its abrogation." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993).

Although Defendant carries the burden of establishing these factors when seeking transfer under U.S.C. § 1404, Plaintiff, as the party attempting to rebut the first-to-file rule, shoulders the burden when assessing the factors for the purpose of determining whether a compelling circumstance exists.

[ECF No. 37 (alteration in original)].

Although Plaintiff alleges error in placing the burden on him to establish why transfer is inappropriate using the § 1404 factors, the law is well-settled that, once the three first-filed rule factors have been established, the party opposing transfer must bear the burden of establishing why transfer is inappropriate. *Manuel*, 430 F.3d at 1135 ("[W]e require that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)).

Consequently, there is no error in the Undersigned's earlier determination that Plaintiff bears the burden of establishing that transfer is inappropriate under the first-to-file rule and, therefore -- in the first-filed context-- must establish that the § 1404 factors support a declination to transfer the case.

Plaintiff previously accused Defendant of bad faith tactics and forum shopping, which he claimed supported a rejection of Defendant's transfer motion. The Undersigned rejected those arguments and found no evidence of bad faith or forum shopping by Defendant. In his motion for reconsideration and in his objections, Plaintiff makes no mention of the Undersigned's earlier rejection of these arguments. Nor does he explicitly object to the lack of weight the Undersigned afforded to the fact that MSP's lawsuit is also pending in this jurisdiction. Instead, he contests the Undersigned's determinations only as to whether certain § 1404 factors favored Defendant.

Because both Plaintiff and Defendant focus exclusively on the § 1404 factors in their arguments concerning the appropriateness of transfer under *both* grounds, the Undersigned will address these arguments as applied under both burdens simultaneously. When appropriate, the Undersigned will make additional findings that are unique to which party bears the burden.

   b.  28 U.S.C. § 1404

Courts must engage in a two-prong inquiry when considering whether transfer is appropriate under 28 U.S.C. § 1404: first, the Court must determine whether the action could have initially been brought in the destination forum; and second, the Court must balance the private and public factors to determine if transfer is justified. *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001).

The party seeking to transfer a case under § 1404 shoulders the burden to "establish that the suggested forum is more convenient." *Steifel Lab'ys, Inc. v. Galderma Lab'ys, Inc.*, 588 F. Supp. 2d 1336, 1338 (S.D. Fla. 2008) (citing *In re Ricoh Corp.*, 870 F.2d at 573). This standard affords broad discretion to the district court and its decision will be overturned only if that discretion is abused. *See Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193 (11th Cir. 1991) (holding that the district court did not abuse discretion in transferring a case that would impose financial hardship on a party no matter where it was heard).

Here, the parties do not dispute that this action could have been brought in the Southern District of New York. Thus, Defendant has established the first prong.

Turning to the second factor, balancing the private and public factors under 28 U.S.C. § 1404 requires the Court

> [t]o determine whether the convenience of the parties and witnesses and the interest of justice favor transfer, a court considers: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Rojas v. Am. Honda Motor Co.*, No. 19-21721-CIV, 2019 WL 6324616, at *3 (S.D. Fla. Nov. 26, 2019) (citing *Manuel*, 430 F.3d at 1135 n.1).

In Plaintiff's view, all nine factors weigh against transfer but factor four could be, at best, neutral. [ECF Nos. 54; 63]. Defendant's position is that factors 1, 3-5, and 9 all favor transfer, factor 8 deserves no weight, factors 2 and 7 are neutral, and factor 6 favors Plaintiff. [ECF No. 61].

Although each factor should be considered in determining whether transfer is appropriate, the individual factors are not all entitled to equal weight. *See, e.g., Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc.*, No. 14-CIV-22652, 2015 WL 224952, at *2 (S.D. Fla. Jan. 15, 2015) ("[T]he convenience of non-party witnesses is an important, if not the most important, factor in determining whether a motion for transfer should be granted."); *Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-cv-80813, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) (affording little weight to the second factor because "[i]n a world with . . . copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant"); *Greiser v. Drinkard*, No. 18-61126-CIV, 2018 WL 7287083, at *5 (S.D. Fla. Nov. 16, 2018) (acknowledging that the weight afforded to the plaintiff's choice of forum can change based on the facts of the case).

Thus, the proper route is not to engage in a formulaic tallying of the factors; rather, the Court must "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612,

622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)); *accord Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002).

The central disputes between Plaintiff and Defendant concern the traditionally more-heavily-weighted factors in the § 1404 analysis: (1) the weight accorded to Plaintiff's choice of forum; (2) the locus of operative facts; (3) the convenience of the witnesses; and (4) the convenience of the parties. The Undersigned agrees that these four factors are among the key factors that should be considered but would add the ninth factor (trial efficiency and the interests of justice, based on the totality of the circumstances) as an additional factor warranting heavy consideration on these facts.

Although I will address each individual factor, I will discuss the more-important factors first (except for the ninth factor which, despite its importance, I will address last).

i.   The Weight Accorded to Plaintiff's Choice of Forum

The Undersigned previously found that, in the context of the first-filed rule, Plaintiff's choice of forum was deserving of no weight. [ECF No. 37]. Regardless of which party bears the burden -- Plaintiff under the first-to-file rule or Defendant under § 1404 -- the finding does not change, and Plaintiff's choice of forum should be afforded no deference in this case.

A plaintiff's choice of forum is usually entitled to considerable deference. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."). The

considerable deference afforded, however, is not absolute. Many case-specific factors can diminish the amount of deference that should be afforded to a plaintiff's choice of forum.

Plaintiff acknowledges this principle but argues that "courts typically afford a plaintiff's choice of forum less deference only when she files her lawsuit outside of her home forum." [ECF No. 63]. In support of this position, he cites two cases: *Nat'l Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236 (M.D. Fla. 2016) and *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153 (10th Cir. 2010), neither of which deal with putative class actions. In Plaintiff's view, because he filed in his home forum and this exception does not apply, his choice of forum should be afforded "considerable if not determinative deference." [ECF No. 63].

This, however, is not the only circumstance considered by the Court when assessing the weight afforded to a plaintiff's choice of forum. Relevant here, as Defendant correctly notes, when the case involves a putative class action, "the plaintiff's choice of forum is given less than normal deference." *Balloveras v. Purdue Pharma Co.*, No. 04-20360-CIV-MORENO, 2004 WL 1202854, at *1 (S.D. Fla. May 19, 2004). In response, Plaintiff says that "Pfizer's ongoing contention that Plaintiff's choice of forum should be accorded 'no weight' because this is a putative class action or because some other events might have occurred outside this District is simply incorrect and immaterial." [ECF No. 63 (internal citation omitted)]. Plaintiff goes on to argue that Defendant "has not cited a single case" establishing that a class action plaintiff's choice of forum is "entitled to no weight at all,"

and if Defendant were "correct that a defendant's headquarters is the *de facto* forum for any class action . . . then the § 1404 factors would be superfluous." *Id*.

These are nothing more than strawman arguments. Plaintiff is correct that no court has held that a class action defendant's headquarters is the *de facto* forum for a lawsuit. Plaintiff is also correct that Defendant has not cited a case holding that a class action plaintiff's forum is entitled to no deference or the fact that the locus of the dispute occurred outside a plaintiff's chosen forum eliminates any deference. However, Defendant has not made any of these individualized arguments. Rather than addressing the factors in the *aggregate*, as Defendant does in its motion, Plaintiff isolates them in an attempt to paint Defendant's position as extreme and unsupported by reason or law.

However, as outlined in the Undersigned's earlier Report and Recommendations, this case contains multiple deference-minimizing factors.

To begin, Plaintiff is a named representative of a putative class action, which means his choice of forum is entitled to less-than-usual deference. *See, e.g., Balloveras*, 2004 WL 1202854, at *1 ("[T]he plaintiff's choice of forum is given less than normal deference . . . where the suit is a class action."); *MSP Recovery Claims, Series LLC v. Wesco Ins. Co.*, No. 20-CV-24048-UU, 2021 WL 1043892, at *1 (S.D. Fla. Feb. 4, 2021) ("[T]he plaintiff's choice of forum is given less deference where, as here, the suit is a nationwide class action."); *Kadel v. Flood*, No. 07-61753-CIV, 2008 WL 11319455, at *1 (S.D. Fla. Apr. 4, 2008) ("[A]s a

class action, there is less deference to be given to the [p]laintiffs' choice of forum."). As stated by the United States Supreme Court:

> [W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

*Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

This deference is further undercut when the locus of operative facts "underlying the action occurred outside the district in which the action is brought." *Balloveras*, 2004 WL 1202854, at *1; *see also Moghaddam v. Dunkin Donuts, Inc.*, No. 02-60045-CIV-ZLOCH, 2002 WL 1940724, at *3 (S.D. Fla. Aug. 13, 2002) ("The Court further notes that a plaintiff's choice of forum will be afforded less deference when the operative facts underlying the action occurred outside the district chosen by the plaintiff."); *Windmere Corp. v. Remington Prod.*, Inc., 617 F. Supp. 8, 10 (S.D. Fla. 1985) ("[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the [p]laintiff, the choice of forum is entitled to less consideration.").

Moreover, "a plaintiff's choice of a forum warrants less deference if 'there is any indication that plaintiff's choice of forum is the result of forum shopping.'" *Clinton v. Sec. Benefit Life Ins. Co.*, No. 19-24803-CIV, 2020 WL 6120565, at *8 (S.D. Fla. June 29, 2020),

report and recommendation adopted, No. 19-24803-CIV, 2020 WL 6120554 (S.D. Fla. July 21, 2020) (quoting *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)).

On this final point, Plaintiff argues that the proper focus of this inquiry is on him, not on his counsel. He cites to *Epler v. Air Methods Corp.*, No. 6:21-CV-461-PGB-DCI, 2021 WL 2806207, at \*6 (M.D. Fla. June 4, 2021) as support.

Although the *Epler* Court held that the "proper forum shopping analysis focuses on the plaintiff, not the plaintiff's attorneys," it did so in markedly different circumstances. Most importantly, the *Epler* plaintiffs were "not members of any putative classes in any pending actions in the District of Colorado. Therefore, [the] [p]laintiffs' only means to obtain relief is to file their own separate lawsuit in their home state." Moreover, the *Epler* class sought to represent only Florida plaintiffs. Here, Plaintiff was, until the very-recent dismissals, also a member of a New York national class action and, unlike the *Epler* plaintiff, he seeks to represent a nationwide class, which would necessarily include potential class members located in New York.

Moreover, other courts have chosen to place the forum shopping blame on counsel instead of the individual plaintiff. For example, in *Rojas*, 2019 WL 6324616, at \*3, the court found that the plaintiff forum shopped based on a finding that his attorneys filed the similar Florida action to avoid a negative California ruling. Likewise, United States District Court Judge Steve C. Jones held the following in a Northern District of Georgia case:

26

>Moreover, [the] [p]laintiff is clearly forum shopping, which minimizes the impact of his choice of forum. [The] [p]laintiff is represented by a law firm that represents other [Assistant Store Managers ("ASMs")] across the country in numerous FLSA actions against [the] [d]efendant. [The] [p]laintiff's filings show that his aim is to certify this matter as a national collective action: [the] [p]laintiff's complaint repeatedly focuses on the alleged national scope of the FLSA violations, and [the] [p]laintiff's initial disclosures set forth class damages on a national basis and state that [the] [p]laintiff may amend his [c]omplaint to allege a nationwide collective action. In several (if not all) of the other FLSA actions across the country in which Morgan & Morgan represents ASMs, the plaintiffs have likewise sought to proceed as a nationwide collective action. It is clear that the ASMs across the country-who are represented by the same firm-are looking for a favorable forum that will allow them to pursue a single, nationwide action on behalf of all ASMs. Therefore, [the] [p]laintiff's choice of forum carries little to no weight.

*Smith v. Dollar Tree Stores, Inc.*, No. 1:11-CV-02299-SCJ, 2012 WL 12343344, at *4 (N.D. Ga. May 10, 2012) (internal record and case citations omitted).

Because this purports to be a nationwide class action and Plaintiff's counsel has taken calculated steps in filing, serving, and dismissing cases -- all seemingly with the intent to choose what it views as the best jurisdiction in which to proceed -- the Undersigned finds it appropriate to examine the actions of Plaintiff's counsel in assessing this factor.

The Undersigned previously found that there was "indicia of forum shopping." [ECF No. 37]. As will be explained in more detail under the factor nine analysis, the Undersigned concludes that Plaintiff's counsel is forum shopping.

Thus, three factors -- which each *independently* diminish the deference afforded to a plaintiff's choice of forum -- exist in this case. Specifically, a forum-shopping, class

action plaintiff selected a forum where the locus of operative facts did not occur. If only one of these factors existed, then Plaintiff's choice of forum might be entitled to some, diminished deference. But, because all three exist, the Undersigned affords Plaintiff's choice of forum no weight under either the first-to-file rule or under 18 U.S.C. § 1404.

## ii. The Locus of Operative Facts

"'The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue.'" *Harvard v. Inch*, 408 F. Supp. 3d 1255, 1262 (N.D. Fla. 2019) (quoting *National Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016)). "'To determine the locus of operative facts, courts look to where the events from which the claim arises occurred.'" *Clinton*, 2020 WL 6120565, at *6 (quoting *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 268 (D. Conn. 2012)).

In complex cases, it is possible that *no* single jurisdiction may be the *sole* locus of operative facts. In those situations, "not every occurrence relevant to a claim need have occurred in a particular forum to make that forum the locus of operative facts." *Id.* (citing *Costello*, 888 F. Supp. 2d at 268-69.

Plaintiff claims that the locus of operative facts weighs against transfer or is, at best, neutral. [ECF No. 63]. Plaintiff offers the following loci: Florida, Ireland, and Germany. In his view, "New York, and the Southern District of New York, in particular, has no nexus to the manufacture of Chantix." He "is a Florida plaintiff that complains of economic harm suffered in Florida when he purchased an adulterated product in

28

Florida." [ECF No. 63]. The other loci are in Ireland and Germany because those are the locations in which Chantix is manufactured. *Id.*

Defendant, on the other hand, contends that this lawsuit is not simply about what occurred in the manufacturing plants themselves and says that many events and decisions relevant to Chantix's manufacture, production, advertising, and regulation occurred in or around the New York area. [ECF No. 61].

The Complaint will provide an appropriate foundation for assessing the merits of the parties' contentions. Plaintiff's Complaint makes the following relevant allegations:

> This case arises from adulterated, misbranded, and unapproved varenicline
> -containing drugs ("VCDs") that were *designed*, manufactured, *marketed*,
> distributed, packaged, and/or ultimately sold by Defendant Pfizer, Inc., in
> the United States under the brand name Chantix®. These VCDs are non-
> merchantable, and are not of the quality represented by Defendant. [ECF
> No. 1, at ¶ 1 (emphasis added)]

> Defendant willfully ignored warnings about the operating standards, and
> knowingly and fraudulently manufactured, sold, labeled, marketed, and/or
> distributed adulterated and/or misbranded VCDs for purchase in the
> United States by consumers. *Id.* at ¶ 9.

> Defendant VCDs were adulterated and/or misbranded (and thereby
> rendered worthless) through contamination with a probable human
> carcinogen known as [N]-nitroso-varenicline. Additionally, Defendant was
> on notice of other potential nitrosamines as well, such as n-
> nitrosdimethylamine ("NDMA") and n-nitrosodiethlamine ("NDEA"). *Id.*
> at ¶ 10.

> On July 2, 2021, and July 19, 2021, Pfizer initiated recalls of VCDs "because
> [the product] may contain levels of a nitrosamine impurity, called N-
> nitroso-varenicline, above FDA's acceptable intake limit." The FDA has yet
> to release full testing results for other nitrosamine impurities. On

September 16, 2021, Pfizer extended its recall to all Chantix. *Id.* at ¶ 13 (footnote omitted).

Because Defendant did not disclose that its product contained N-nitroso-varenicline or other nitrosamines as an ingredient, the subject drugs were misbranded. *Id.* at ¶ 82.

In addition, Defendant affirmatively misrepresented and warranted to consumers through their websites, brochures, and other marketing or informational materials that its VCDs complied with [current Good Manufacturing Practices] and did not contain (or were not likely to contain) any ingredients besides those identified on the products' FDA-approved labels. *Id.* at ¶ 123.

These illustrative examples establish the allegations levied by Plaintiff extend beyond the

simple manufacturing process for Chantix.

In support of its argument that the operative facts relevant to some of these

allegations occurred in the New York area, Defendant submitted a declaration from Dr.

Thomas D. McCrae, the Senior Director at Pfizer:

"The clinical, medical, regulatory, safety, and commercial strategy for Chantix was developed and executed by Pfizer employees based primarily in New York or in the New York area";

"Pfizer scientists discovered the active ingredient in Chantix, varenicline, at a research laboratory located in the New York area";

The testing and clinical trials of Chantix were overseen by and performed at the direction of Pfizer researchers based either in New York or in the New York area;

"Correspondence with regulatory authorities," including FDA, related to Chantix "were handled by Pfizer employees based primarily in New York and the New York area";

"When Pfizer became aware of the potential presence of a nitrosamine in Chantix, Pfizer scientists and physicians based in New York and the New York area evaluated the medical safety of the medication";

"When the presence of a novel nitrosamine, named N-nitroso-varenicline, was detected, the primary Pfizer toxicologist responsible for calculating the acceptable daily intake for N-nitroso-varenicline did so from the New York area"; and

The decisions related to the voluntary recall of Chantix were made by Pfizer employees, several of whom are based in New York and the New York area.

[ECF Nos. 56-5; 61].[7]

Based on the declaration, it appears that much of Defendant's decision-making concerning the marketing, testing, and regulatory compliance occurred in New York or the New York area.[8] Moreover, its decisions assessing the medical safety, the acceptable

---

[7]      In its motion, Defendant misattributes the source of these claims to Plaintiff's Complaint. Plaintiff refers to this as a "misrepresent[ation]" and argues that "none of the bullets [Defendant] purports to quote appear anywhere in Plaintiff's Complaint." A review of Dr. Thomas D. McRae's declaration and the corresponding paragraphs, as compared to Defendant's citations, reveals that this declaration is the correct source of Defendant's alleged operative facts. [ECF No. 56-5].

[8]      Plaintiff argues that the discussion should be limited to facts arising exclusively in Manhattan. [ECF No. 63]. Defendant's affidavit specifically refers to New York, Groton, Connecticut, and Peapack, New Jersey. All locations but Groton, Connecticut are within the 100-mile distance permitted under Federal Rule of Civil Procedure 45(c)(1)(A). Further, the Undersigned does not find it impermissible to extend the considerations beyond the strict, jurisdictional border of the Southern District of New York. *See Amaya*, 2009 WL 10667492, at *1 (transferring case to Southern District of Ohio when witnesses were "located in Ohio or [we]re likely to reside someplace convenient to the Southern District of Ohio").

31

daily intake, and ultimately whether to conduct a voluntary recall occurred either in New York or the New York area (or partly occurred in New York or the New York area).

Based on the allegations in the Complaint, the Undersigned cannot imagine this class-action lawsuit proceeding without Plaintiff seeking to investigate and learn more about these facts and decisions. Certainly, loci likely also exist in Ireland and Germany. The fact that loci potentially exist in three areas -- Ireland, Germany, and New York -- does not mean, however, that Florida is necessarily a more-appropriate venue for this case.

Plaintiff's argument in support of an operative event occurring in Florida surrounds his prescription and purchase of the drug in Florida. These events might be critically important were they paramount to Plaintiff's allegations or his request for class certification. But the Undersigned finds that possibility improbable. If Plaintiff's *specific* doctor and *specific* pharmacy -- and the specific facts surrounding those interactions -- are indispensable to Plaintiff's case, then it might be that Plaintiff does not have a class action claim at all, at least not one which extends beyond class members also using his same pharmacy and doctor.

Under the first-to-file rule, it is Plaintiff's burden to show that Florida is more appropriate. He has fallen well short of meeting this burden. He has established no operative facts related to his class action complaint which occurred in Florida. Despite the claimed nexus surrounding his doctor and pharmacy, Plaintiff makes no mention in

his Complaint of these specific interactions. Thus, under this standard, the factor weighs in favor of transfer.

Shifting the burden to Defendant does not shift the result. Defendant has met its burden under 28 U.S.C. § 1404 to establish that among the loci of operative facts, New York is home to a considerable amount. This finding is consistent with rulings from other courts in this District. *See, e.g., Balloveras*, 2004 WL 1202854, at *1 (finding that transfer was appropriate under 28 U.S.C. § 1404(a), in part, because "most of the Purdue witnesses reside in New York, and Oxycontin itself was developed in New York"); *Amaya v. Victoria's Secret Stores, LLC*, No. 08-81367-CIV, 2009 WL 10667492, at *1 (S.D. Fla. Aug. 3, 2009) (finding transfer appropriate under 28 U.S.C. § 1404(a), in part, because "[t]he place of purchase . . . is not relevant since products can be purchased anywhere. Information relating to an alleged design or manufacturing defect will be found where the product is designed and manufactured"); *Rojas*, 2019 WL 6324616, at *1 (finding transfer appropriate under 28 U.S.C. § 1404(a), in part, because in a case alleging defects in a product, "the locus of the operative facts is where [the] [d]efendants are").

Because there are multiple loci, however, this factor does not weigh as heavily in favor of transfer under 28 U.S.C. § 1404(a) as it might if all events occurred in New York or the New York area. However, because Florida has no connection to this case other than it being the location of this named Plaintiff, his doctor, and the pharmacy he used, the factor still tilts in favor of transfer.

iii.   Convenience of the Witnesses

"[T]he convenience of witnesses is one of the most important factors in determining whether granting transfer is appropriate." *Amaya*, 2009 WL 10667492, at *4. The convenience to non-party witnesses warrants even more consideration. *Cellularvision Tech. & Telecommunications, L.P. v. Cellco P'ship*, No. 06-60666-CIV, 2006 WL 2871858, at *3 (S.D. Fla. Sept. 12, 2006) ("The convenience of non-party witnesses is an important, if not the most important, factor in determining whether a motion for transfer should be granted."). The convenience is less important, however, when the witness is an employee of one of the parties. *Sorenseon, v. American Airlines, Inc.*, No. 22-CV-20265, 2022 WL 2065063, at *5 (S.D. Fla. June 8, 2022) ("[W]here witnesses are employees of a party, their convenience is entitled to less weight because the respective party will be able to compel their attendance and testimony at trial.").

Both parties argue that this factor falls in their favor.

Defendant offers general examples of relevant witnesses who reside in New York or in the New York area:

> For more than 20 years, the clinical, medical, regulatory, safety, and commercial strategy for Chantix was developed and executed by Pfizer employees based primarily in New York or in the New York areas (including Pfizer facilities located in Peapack, New Jersey and Groton, Connecticut). Correspondence with regulatory authorities, including the U.S. Food & Drug Administration ("FDA"), were handled by Pfizer employees based primarily in New York or in the New York Area.

> Pfizer scientists discovered the active ingredient in Chantix, varenicline, at a research laboratory located in the New York area (Gronton, Connecticut).

34

> For more than a decade, Pfizer tested Chantix first in laboratory experiments, then in animal studies, and finally in human clinical trials, all of which were overseen by and performed at the direction of Pfizer researchers based either in New York or in the New York area (Groton, Connecticut).
>
> One of the third parties that manufactures the excipients (non-active ingredients) in Chantix is based in New York.

[ECF No. 56-5, ¶¶ 4-5, 7].

In Plaintiff's view, these defense arguments do not support transfer because: (1) Defendant has not explicitly identified specific witnesses; and (2) Defendant's witnesses are its own employees, and the convenience factor should therefore be afforded little or no weight. On the first point, Plaintiff alleges that Defendant ignores "this Circuit's black-letter law" and "relies on nothing more than a 'general allegation that [unidentified] witnesses will be necessary[.]'" [ECF No. 63 (citing *Nat'l Tr. Ins. Co.*, 223 F. Supp. 3d at 1243 (alterations in original)]. On the second point, Plaintiff argues that because these witnesses are Defendant's own employees, it will be able to easily secure their attendance if necessary.

The Undersigned rejects Plaintiff's argument that "this *Circuit's* black-letter law" (emphasis added) requires a party to name witnesses with specificity. Plaintiff does not rely on an Eleventh Circuit decision in support of his assertion. Instead, Plaintiff's claim is based on non-binding district court decisions from the Middle District of Florida and the Northern District of Georgia.

In fact, courts in this District have found this factor favors transfer even when only a general declaration was provided, at times rejecting the very argument Plaintiff currently raises. *See, e.g., Amaya*, 2009 WL 10667492, at *4 (rejecting argument that "defendants must identify key witnesses and state the significance of those witness' testimony to support a motion for transfer" and finding it sufficient when although "defendants have not presented a list of key witnesses, they have discussed certain groups of individuals that will be used as witnesses"); *Balloveras*, 2004 WL 1202854, at *1 (finding that the defendant established that the convenience of witnesses factor supported transfer based on an affidavit providing only general information).[9]

The majority of Defendant's witnesses -- Pfizer scientists, researchers, and employees -- should be "given less weight [on this factor] because [Defendant] can obtain their presence at trial." *Mollica v. Parker*, No. 3:10-CV-121-J-34TEM, 2011 WL 13295394, at *3 n.3 (M.D. Fla. Feb. 23, 2011) (quoting § 3851 Standard in Considering Transfer—Convenience and Location of Witnesses, 15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.)). However, despite Plaintiff's contention, the fact that these witnesses are Pfizer employees does not mean their inconvenience ought be *completely* ignored by the Court. *Sunscreen Mist Holdings, LLC v. Snappyscreen, Inc.*, No. 18-20971-CIV, 2019 WL 8405208, at *3 (S.D.

---

[9]     The declaration upon which the *Balloveras* Court relied can be found at [1:04-cv-20360-FAM, ECF No. 12, pp. 94-96].

36

Fla. Feb. 11, 2019) ("Here, all of Snappyscreen's employees are located in the Eastern District of New York. Thus, the convenience of witnesses favors transfer.").

Plaintiff, in turn, raises his own allegations of witness inconvenience. In support of his position, Plaintiff argues that the Southern District of Florida is the jurisdiction where "[he] resides, as well as his pharmacy that dispensed [] adulterated Chantix to him, and his healthcare providers that prescribed it to him."[10] [ECF No. 63]. He further argues that this District is home to Apotex, "a key non-party in this case." *Id*. He notes that Apotex was "among the first entities publicly contacted by Health Canada about nitrosamine contamination in Chantix," and alleges that the "FDA worked with Apotex so that [it] could distribute its own generic Chantix Product." *Id*. On this final point, Plaintiff argues:

> *If* Apotex is able to manufacture and sell an appropriately made generic version of Chantix in the United States, when Pfizer itself cannot, then the different chemical processes and quality oversight that Apotex employs is extremely probative of what Pfizer is doing wrong. That is, what Apotex might be doing right could be just as important, if not more so, than what Pfizer is doing wrong (at its manufacturing plants in Ireland and Germany).

*Id*. (emphasis supplied).

To begin, the Undersigned allocates no weight to the fact that Plaintiff, his healthcare provider, and his pharmacy are located in South Florida. The specific manner

---

[10]   The Undersigned notes that Plaintiff has not identified his "healthcare providers" or pharmacist with specificity in his motion or via a declaration. Based on his stated view, this means that these witnesses should not be considered.

in which this individual plaintiff was prescribed and obtained Chantix will have no relevance in this putative *class action* lawsuit. Moreover, Plaintiff's "testimony [on the substantive merits] is unlikely to be required as he is merely a class representative." *Balloveras*, 2004 WL 1202854, at *2. Thus, the only witness of alleged import identified by Plaintiff is Apotex.

Plaintiff has failed to establish that Apotex, an admitted non-party, is a "key" witness to this case. Plaintiff proffers only that Apotex was "*among* the first entities *publicly* contacted by Health Canada." This statement is extremely vague. The term "among" could mean that it was one of the first twenty (or more) entities contacted. If Defendant had knowledge of the contamination before Apotex learned of it, then Apotex's relevant information on this fact would be non-existent. Plaintiff also includes an additional qualifier to this receipt of information -- that Apotex was one of the first *public* contacts. If other entities were contacted privately, then it would substantially diminish the value of Apotex's purported testimony.

Plaintiff's final argument in support of the significance of Apotex's testimony is couched in a hypothetical: "*If* Apotex is able to manufacture and sell an appropriately made generic version of Chantix. . . ." The Undersigned cannot afford great weight to a witness whose relevance is based on a hypothetical future event.

Finally, Plaintiff claims that Defendant has failed to demonstrate that Apotex would willingly testify in New York. This is true, and if Apotex were a relevant witness,

then it would be Defendant's burden to establish willingness under 28 U.S.C. § 1404. However, under the first-to-file rule, Plaintiff shoulders the burden and he has failed to establish that Apotex -- a Pfizer competitor -- would be unwilling to travel to New York to testify in a lawsuit against its competition.

Thus, Plaintiff has failed to demonstrate that there are any necessary Florida witnesses who would be inconvenienced if this case were transferred to New York. Defendant, on the other hand, has identified a third-party manufacturer and employee-witnesses who would be inconvenienced.

Under the first-to-file rule, this factor falls heavily in Defendant's favor, as Plaintiff has failed to meet his burden to establish that this constitutes a "compelling circumstance" to keep this case in Florida. Under 28 U.S.C. § 1404, Defendant has established that multiple witnesses -- Pfizer employees entitled to lessened deference and a single third-party manufacturer -- would be inconvenienced, which means the factor falls slightly in its favor due to Plaintiff's failure to establish any relevant witness inconvenience.

iv.   Convenience of the Parties

Transfer under this factor is generally inappropriate where it "merely shifts the inconvenience from one party to another." *Mason*, 146 F. Supp. 2d at 1361. But, neither party here is a typical plaintiff or defendant.

In a class action "'plaintiffs will reside all over the country,' and 'any two given states will likely be of equal convenience as a forum.'" *Clinton*, 2020 WL 6120565, at *5 (quoting *Huntley v. Chicago Bd. of Options Exch.*, 132 F. Supp. 3d 1370, 1374 (N.D. Ga. 2015)). Further, the domicile of corporate defendants and their place of incorporation should be given only "little weight." *D3D Techs., Inc. v. Microsoft Corp.*, No. 620CV1699ORL31DCI, 2021 WL 2194598, at *4 (M.D. Fla. Feb. 4, 2021).

The Court is, however, permitted to look slightly beyond the specifics of the individual parties. As part of its evaluation, the Court can also consider "appearance of employees at court, and, to some extent, the appearance of counsel." *Clinton*, 2020 WL 6120565, at *5 (quoting *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328 (M.D. Fla. 2010)). Here, Plaintiff's counsel does not reside in Miami -- or even in Florida. Instead, his counsel is based out of Philadelphia, Pennsylvania, which is but a short drive from New York. Indeed, of the attorneys who appeared at the status hearing, only MSP's counsel is based in Miami. [ECF No. 53].

Thus, any expenses incurred by Plaintiff's counsel will likely be *increased* by litigating this case in Florida. In the event the case settles, and Plaintiff seeks attorney's fees as part of the settlement, this amount will also likely be enlarged based on the increased expenses associated with traveling from Philadelphia to Miami (as opposed to Philadelphia to New York). Therefore, the scales tip slightly in Defendant's favor.

For these reasons, under the first-to-file rule, Plaintiff has failed to establish that this factor constitutes a compelling circumstance negating the rule's presumptive application. However, under 28 U.S.C. § 1404, this factor should be treated as neutral or as slightly favoring Defendant. The putative class contains plaintiffs from throughout the nation, and although Defendant, as a corporation, should receive only little weight based on its location, this weight still outweighs the *de minimis* inconvenience the class will suffer litigating this case in New York.

    v. <u>The Availability of Process to Compel the Attendance of Unwilling Witnesses</u>

Neither party has offered argument or evidence indicating that any of the witnesses it believes are relevant to the case would be unwilling to testify unless compelled. Thus, this factor neither weighs in Plaintiff's favor as a compelling circumstance justifying an exception to the first-filed rule, nor does it weigh in Defendant's favor in the context of 28 U.S.C. § 1404. *See, e.g., Legg v. Quicken Loans, Inc.*, No. 14-61116-CIV, 2015 WL 13753742, at *3 (S.D. Fla. Mar. 6, 2015) (determining that the availability of process factor "does not weigh in either party's favor" where "[n]either party has identified any witnesses that are potentially unwilling to participate at trial and thus the availability of process to compel the attendance of unwilling witnesses is a non-issue").

Therefore, under either standard, this factor should be neutral.

    vi. <u>The Relative Means of the Parties</u>

41

The Undersigned previously found that this factor fell in Plaintiff's favor under the first-filed rule. [ECF No. 37]. Defendant has offered no argument supporting a new finding on this issue. Thus, the Undersigned finds that this factor falls in Plaintiff's favor under both the first-filed rule and 28 U.S.C. § 1404. However, as before, the Undersigned determines this factor to hold little to no weight. Were it otherwise, a putative class action plaintiff would have the *de facto* ability to choose his preferred forum irrespective of any consideration any time the defendant was a wealthy corporation.

vii.   Location of the Relevant Documents

"In most cases today, including this one, technological advancements have rendered the physical location of documents and other types of proof virtually irrelevant." *Ritter v. Metroplitan Cas. Ins. Co.*, No. 4:19-CV-10105-KMM, 2019 WL 8014511, at *4 (S.D. Fla. Dec. 3, 2019); *see also Microspherix LLC*, 2012 WL 243764, at *3 ("In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant. In light of the burden a party moving for transfer bears, absent a showing by the moving party to the contrary, this Court considers the location of relevant documents and the relative ease of access to sources of proof a non-factor.").

Defendant offers no argument in support of this factor favoring transfer and acknowledges that the Court previously found this factor to be neutral. [ECF No. 61]. On the other hand, Plaintiff claims that this factor "does not favor transfer." [ECF No. 63].

Given that Plaintiff has conceded that "locus of operative facts" might be "neutral," it is unclear to the Undersigned whether Plaintiff's alternative choice of phrasing indicates that he believes this factor is deserving of some weight.

Plaintiff claims that his own records and the records of the plaintiffs of two related actions, as well as those of non-party Apotex, are located in this District. [ECF No. 63]. Further, the documents that should be important to this case will be located at the manufacturing facilities in Ireland and Germany. He then claims that the documents that may be in Manhattan deserve no weight because "Pfizer has argued in the past (contrary to its position here) that the presence of some records at its headquarters is immaterial." *Id.*

Defendant has raised no argument that this factor supports transfer. And the Undersigned is unconvinced by Plaintiff's argument that the comparatively miniscule non-Pfizer documents likely to be available in this District justify treating this factor as anything other than neutral under either the first-filed rule or 28 U.S.C. § 1404.

       viii.   Forum's Familiarity with the Governing Law

This factor is neutral under either standard. *See, e.g., Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 67–68, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013) ("And, in any event, federal judges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia."); *Sterling*

*v. Provident Life & Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007) (a federal court sitting in diversity is fully capable of interpreting the law of another state).

Although Plaintiff argues that he "is a Florida resident who alleges claims under Florida law," [ECF No. 63], he ignores the contents of his own Complaint, which alleges that Defendant has violated the consumer protection statutes of every single state and Puerto Rico [ECF No. 1, ¶¶ 202 a-aaa]. This argument is unavailing.

ix.   Trial Efficacy and the Interests of Justice

As former United States District Court Judge Adalberto Jordan (now a United States Circuit Court Judge on the Eleventh Circuit Court of Appeals) has stated on this factor:

> The interests of justice require that a court consider "the forum in which judicial resources could most efficiently be utilized, and place in which trial would be most easy, expeditious, and inexpensive." *Garay v. BRK Electronics*, 755 F. Supp. 1010, 1013 (M.D. Fla. 1991). Thus, in considering whether the interests of justice favor transfer, courts have considered the relative sizes of the dockets between the transferor and transferee courts. *See id.*; *Windmere*, 617 F. Supp. at 11; *Oller v. Ford Motor Co.*, 1994 WL 143017, *1, *2 (M.D. Fla. Mar. 30, 1994). Courts also consider where any alleged wrongdoing occurred. *See Manoochehr Fallah Moghaddam v. Dunkin Donuts, Inc.*, 2002 WL 1940724, *1, *5 (S.D. Fla. Aug. 13, 2002).

*Am. Residential Equities, LLC v. Select Portfolio Servicing, Inc.*, No. 06-20007-CIV, 2006 WL 8433459, at *3 (S.D. Fla. Apr. 19, 2006).

Both parties offer compelling efficacy arguments in support of their position on this factor. Defendant notes that Judge Cote has already done the research on the legal issues relevant to Plaintiff's claim and issued a thoroughly-researched substantive ruling.

44

Were the case to remain in this District, Defendant argues, it would require this Court to duplicate the "already expended judicial resources becoming familiar with the facts and claims asserted in this case." [ECF No. 61].

Plaintiff counters by arguing that the Southern District of Florida is a much- more-efficient District than the Southern District of New York, based on the following data:

|  | S.D. Fla. | S.D.N.Y. |
|---|---|---|
| Median Time from Filing to Trial | 24.5 months | 36.7 months |
| Median Time from Filing to Disposition | 3.3 months | 5.9 months |
| Number of Cases Over Three Years Old | 137 | 3,292 |

[ECF No. 63 (citing Table N/A—U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (December 31, 2021), U.S. COURTS, at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/12/31-3 (last accessed by Plaintiff on May 20, 2022))].

This, Plaintiff argues, means that this District has more available resources and will more efficiently address the merits of the parties' positions. Defendant disputes this point and highlights the fact that the specific S.D.N.Y. judge to whom this case would be transferred resolved the earlier-filed dismissed case in only 77 days, which is less than either of the district's median times.

However, Plaintiff claims that the relative short time frame that the S.D.N.Y had the case means that this District now has more familiarity with the case and, as such, the matter should remain here.

The parties raise other points on this issue and discuss (a) whether other cases pending in the nation could be transferred to either jurisdiction; (b) the presence of other lawsuits in this jurisdiction (*Houghton* and *MSP*, specifically); and (c) the thoroughness of Judge Cote's twenty-six-page ruling. Ultimately, there are myriad factors which could justify finding that either jurisdiction might be more efficient and better suited to handle this case.

Efficiency, however, is not the only consideration under this factor. Instead, a court must also examine what is required by the interests of justice. Indeed, this is one of the factors specifically referenced in the language of 28 U.S.C. § 1404. Plaintiff claims that the interests of justice favor leaving the case in this District, largely because *MSP* and *Houghton* are based in this jurisdiction and because there are no pending Chantix cases in S.D.N.Y. [ECF No. 63]. Defendant argues that this circumstance is merely a product of Plaintiff's "procedural gamesmanship." [ECF No. 61].

The procedural gamesmanship allegation raised throughout the pleadings -- and referred to by Plaintiff as an "[i]nappropriate, [i]rrelevant, and [i]ncorrect" "*[a]d [h]ominem* [a]ttack" -- is a contention that Plaintiff is engaged in forum shopping. In the Undersigned's earlier Report and Recommendations, I found that there was "ample

46

indicia of forum shopping" by Plaintiff. [ECF No. 34]. But, as Plaintiff argues in his motion for reconsideration, since that Report and Recommendations, the "circumstances [have] changed drastically." [ECF No. 54]. Specifically, Plaintiff argues, this case "should not be transferred to the Southern District of New York, as no earlier filed case remains pending there." *Id.*

Plaintiff is correct that no earlier filed case remains in the Southern District of New York. At the time of the earlier Report and Recommendations, there were two cases in that jurisdiction: *Harris* and *Webb*. On February 16, 2022, Judge Cote dismissed *Harris* on the merits. [1:21-cv-06789 (S.D.N.Y.) ECF No. 39]. Then, the following day, *Webb* -- a case filed by Plaintiff's counsel on October 6, 2021 -- was voluntarily dismissed. [1:21-cv-08244 (S.D.N.Y.) ECF No. 15]. Both cases were filed before the instant action and neither are currently pending due to a merits dismissal and a voluntary dismissal.

This voluntary dismissal is an important factor for consideration because Plaintiff's counsel's four other nationwide Pfizer cases are all still pending. *See Edwards v. Pfizer, Inc.*, 2:21-CV-4275 (E.D. Pa.) (filed September 29, 2021) (stayed [2:21-CV-4275 (E.D. Pa.) ECF No. 6]); *Seeley v. Pfizer, Inc.*, 3:21-CV-7892 (N.D. Cal.) (filed October 7, 2021) (stayed [3:21-CV-7892 (N.D. Cal.) ECF Nos. 16; 17]); *Duff v. Pfizer, Inc.*, 2:21-CV-1350 (W.D. Pa.) (filed October 8, 2021) (stayed [2:21-CV-1350 (W.D. Pa.) ECF No. 8]); *Evans v. Pfizer, Inc.*, 3:21-CV-1263 (S.D. Ill.) (filed October 15, 2021) (stayed [3:21-CV-1263 (S.D. Ill.) ECF Nos. 8; 11]).

Thus, of the seven cases filed by Plaintiff's counsel, only two have been dismissed. One, *Jacobson v. Pfizer, Inc.*, 2:21-CV-7961 (C.D. Cal.) (filed October 5, 2021), was dismissed only after a voluntary stay was denied. [2:21-CV-7961 (C.D. Cal.) ECF Nos. 22; 23]). The other, *Webb v. Pfizer, Inc.*, 1:21-CV-8244 (S.D.N.Y.) (filed October 6, 2021) -- which was stayed like the other four still-pending Chantix cases, [1:21-CV-8244 (S.D.N.Y.) ECF No. 13]) -- was dismissed (1) after the Undersigned issued a Report and Recommendations that Defendant's motion to transfer should be granted under the first-filed rule because there were earlier-filed cases pending in New York; (2) almost immediately after the other pending Chantix case was dismissed on the merits; and (3) only slightly before Plaintiff began describing how the world has changed and the earlier Report and Recommendations must be revisited because there is no longer a first-filed case.

Plaintiff's counsel's actions before the issuance of the earlier Report and Recommendations evinced ample indicia of forum shopping. The actions following the earlier Report and Recommendations confirm the theory that Plaintiff's counsel was, and is, forum shopping.

Courts look unfavorably on forum shopping. *See, e.g., Absolute Activist Value Master Fund Ltd. v. Devine*, 826 F. App'x 876, 878–79 (11th Cir. 2020), cert. denied, 141 S. Ct. 2468, 209 L. Ed. 2d 529 (2021) (acknowledging that bad faith can be shown via "fraud on the Court, proof of forum shopping, unreasonable and vexatious multiplying of proceedings, pursuing a case barred by the statute of limitations, or purposely vexatious behavior.");

*Ray v. Nationstar Mortg. LLC of Delaware,* No. 2:17-CV-99-MHT-GMB, 2018 WL 1100897, at *1 (M.D. Ala. Feb. 9, 2018), report and recommendation adopted, No. 2:17CV99-MHT, 2018 WL 1093318 (M.D. Ala. Feb. 28, 2018) (grouping "forum shopping, bad-faith litigation tactics, [and] other equitable considerations" together); *Lab Corp. of Am. Holdings v. NLRB,* 942 F. Supp. 2d 1, 5 (D.D.C. 2013) ("It is not in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents . . . ." (internal quotation marks omitted)).

Indeed, courts developed rules of procedure, interpreted principles of law and sanctioned parties to dissuade litigants from forum shopping. *See, e.g., Hanna v. Plumer*, 380 U.S. 460, 468, 85 S. Ct. 1136, 1142, 14 L. Ed. 2d 8 (1965) ([T]he twin aims of the Erie rule [are] discouragement of forum-shopping and avoidance of inequitable administration of the laws."); *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018) ("To ensure that a case filed in federal court will be handled in the same way as it would be in the courts of the state where the federal court sits, and to discourage forum shopping, we aim to reach the same result that the Florida courts would reach based on the same facts." (internal quotations omitted)); *HafterLaw, LLC v. Pal*, No. 213-CV-01943-GMN-NJK, 2014 WL 4656227, at *6 (D. Nev. Sept. 17, 2014) ("A court may consider whether a complaint 'smacks of harassment and bad faith' or contains indicia of forum shopping to determine whether a transfer would serve the interests of justice." (citing *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992)); *In re Schlakman*, No. 05-36921-BKC-

PGH, 2007 WL 1482011, at *3 (Bankr. S.D. Fla. Jan. 16, 2007) ("Holding that the Florida homestead exemption has no extraterritorial effect discourages debtors from forum shopping to take advantage of Florida's generous homestead exemption.").

Plaintiff's obvious forum shopping outweighs any marginal advantage he may have on this factor based on the efficacy of the case remaining in this District. On efficacy, alone, the Undersigned finds that Plaintiff has failed to meet his burden under the first-filed rule to establish that this is a compelling circumstance to override the rule's presumption. The efficacy factor under 28 U.S.C. § 1404 is neutral.

However, under both the first-filed rule and 28 U.S.C. § 1404, the interests of justice, as contemplated by this individual factor and the broader scope of § 1404, weigh in favor of transfer. The Court must discourage such clear-cut forum shopping by counsel. Filing multiple lawsuits in multiple jurisdictions and then selectively serving those lawsuits after learning of the judicial assignment must be discouraged. Selectively dismissing certain cases to avoid the application of a doctrine of law must also be discouraged. It is possible that Plaintiff's goal once it learned of MSP's lawsuit was a valid one -- to group similar lawsuits in a jurisdiction where the greatest number were located -- but this end does not justify the means.

IV.     **Conclusion**

Despite the fact that both earlier-filed Southern District of New York cases have been dismissed, Defendant has still established the three elements necessary to invoke the first-filed rule's application. Plaintiff has failed to establish compelling circumstances under either the interests of justice or the 28 U.S.C. § 1404 factors which would justify a departure from the first-filed rule's presumptive application.

Specifically, under the first-filed rule: (1) Plaintiff's choice of forum should be afforded no weight; (2) the locus of operative facts favors transfer; (3) the conveniences of the witnesses favors transfer; (4) the convenience of the parties favors transfer; (5) the availability of process is neutral; (6) the means of the parties favors Plaintiff; (7) the location of relevant documents is neutral; (8) the forum's familiarity with governing law is neutral; and (9) efficacy and the interests of justice favor transfer.

Therefore, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's motion to reconsider and **grant** Defendant's motion to transfer under the first-filed rule for the reasons listed in this Report and Recommendations and the Undersigned's earlier Report and Recommendations.

Moreover, under 28 U.S.C. § 1404, Defendant has met its burden to establish that transfer is appropriate. Specifically, under 28 U.S.C. § 1404: (1) Plaintiff's choice of forum should be afforded no weight; (2) the locus of operative facts slightly favors transfer; (3) the conveniences of the witnesses slightly favors transfer; (4) the convenience of the

51

parties slightly favors transfer or should be neutral; (5) the availability of process is neutral; (6) the means of the parties favors Plaintiff; (7) the location of relevant documents is neutral; (8) the forum's familiarity with governing law is neutral; and (9) efficacy and the interests of justice favor transfer. Although the burden on Defendant to establish that transfer under § 1404 is great, because Plaintiff's choice of forum should be entitled to no weight, the nine factors and the interest of justice favor transfer.

Therefore, the Undersigned **respectfully recommends** that the District Court **grant** Defendant's motion to transfer under 28 U.S.C. § 1404. As noted, the nine Section 1404 factors are being used to evaluate both the motion to change venue and the statutory motion to transfer.

### V.    Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*,

474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R.

3-1 (2016).

      **RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on June 22,

2022.

                                 Jonathan Goodman
                                 UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record